JUDGE TUCKER.
Dew, the appellant, obtained a rule from the General Court upon the Judges of the Sweet Springs District Court, to shew cause why a mandamus should not issue, directing them to admit him to the office of clerk of the said District Court; to which a return was made “that at a Court held for the said District, bn the 18th day of May, 180S, the appellant, Dew, produced in Court a commission signed by a majority of the Judges of thGeneral Court, appointing him Clerk of that District *Court, in the room of Samuel Dew, senior, deceased; also a certificate from the Clerk of Botetourt Court, of his having taken the oaths prescribed by law. But not offering sufficient security for the faithful performance of the duties of the said office, the Court proceeded to appoint Erasmus Stribling to fill the'said office, in the room of the said Samuel Dew, who having taken the oaths as the law directs, together with James Breckenridge and others, entered into bond, &e. with such condition as the law requires. And at a District Court continued and held as aforesaid, on the 22d day of May, 1805, Samuel Dew again appeared in Court, and offered sufficient security for the performance of the duties of the Clerk of the said Court, of which the Court took time to consider ; and at a Court continued and held as aforesaid, the next day, the said Samuel Dew was refused to be admitted to the said ■office of Clerk, because, on the first day of the term, when called upon to execute a bond, he offered insufficient security, although the greater part of that day was allowed him to provide security, and previous to the appointment of Erasmus Stribling, said Dew acknowledged he was unable to find farther security on that day; but then alleged that at a future day, it was probable, he would be able to obtain sufficient security.”
The commission and certificate from the Court of Botetourt County within referred to, are in the following words: “These are to certify that Samuel Dew is appointed the Clerk of the District Court to be holden at the Sweet Springs in the County of Monroe, in the room of S. D. senior, deceased. Given under our hands and seals, this 23d of January, A. D. 1805.” Signed with the names of six Judges of the General Court with seals annexed. * * *' At a Court held for Botetourt County, February 12th, 1805, “S. D. gentleman, produced in Court an appointment signed, &c. appointing him Clerk of the District Court, holden, &c. whereupon, the said S. D. took the oath of *fidelity, the oath to support the Constitution of the United States, and the oath of the said office.
“Teste, H. B. Clerk, B. C.
“A Copy, Teste,
“Erasmus Stribling, C. S. D. C.”
To the above copy of the records of the Court, the Judges subjoined, moreover, the following reasons: “We consider it the duty of the Judges to hold a Court on the first day of the term, and find that the civil and criminal business of the country required it; that S. Dew was commissioned in the month of January preceding, and had sufficient time to have procured securitjr, without which, he well knew he could not act. That circumstanced as the Judges were, they could not proceed to elect a Clerk pro tempore, and they would not have been justified in respecting the declaration of the said S. D. that it was probable he could get security at a future day, considering his failure for several months, and the first day of the Court, where a large number of the people of the District were present. We consider, therefore, that the Judges of that Court acted correctly and properly, in the appointment of Erasmus Stribling, who fully answers their expectations and those of the public. ’ ’ Signed by the Judges present, and attested by Erasmus Stribling, C. S. D. C.
As my opinion, in this case, will be founded upon the matters contained in this return, I shall no farther notice the remainder of the record and proceedings in the General Court, than to observe that the above mentioned rule was, on the 13th of November, 1807, discharged. From which order, Samuel Dew prayed, and was allowed an appeal to this Court.
The first question which I shall consider, is, whether the writ of mandamus be the proper remedy in this case?
Judge Buller informs us that the writ of mandamus is, in England, a prerogative writ, issuing out of the Court of K. B. (as that Court has a general superintendency over all inferior jurisdictions and persons,) and is the proper remedy to enforce obedience to acts of Parliament, and to the King’s charters, and in such case is demandable of right, (a) Under *the term charters, are comprehended all grants from the Crown, whether of lands, honours, franchises, or aught besides, (b) Under this description then, all commissions granted by the Crown, whereby any person is authorised to hold, and exercise any public office whatsoever, come under the general head of the King’s charters.
To enforce obedience to such a commission, especially if founded upon the authority of an act of Parliament, the proper remedy is by writ of mandamus, which in such case is demandable of right. And it lies to compel the admission or restoration of the party applying, to any officer or franchise of a public nature, whether spiritual or temporal, (c) Here the office claimed is founded on an act of the Legislature of the Commonwealth, and is grant-able by a commission, under the hands and seals of a majority of the Judges of the General Court; and is, moreover, an office of a public nature, and which relates extensively to the administration of justice *575 through a very large portion of the Commonwealth. It has, therefore, every character that may be thought necessary to entitle the person holding such a commission, and who hath been either refused admittance into his office, or improper^ turned out of it, to the benefit of a writ of mandamus.
It has been objected, however, that a mandamus will not lie, where the party hath another legal and specific remedy; but, we are told otherwise by Judge Blackstone, who calls it a high prerogative writ, of a most extensive remedial nature; and that it may be issued in some cases, where the injured party hath also another more tedious method of redress; as in the case of admission or restitution to an office, (a) This is the very case now before us; and although possibly the injured party may have another remedy, I think there is no other, so well adapted to the nature of the case, as that by mandamus.
I shall now proceed to consider whether, upon this return made to the first rule to shew cause why a mandamus should not issue, the General Court ought or ought not to have awarded the writ.
*The return comprehends the record of the proceedings of the District Court, on three several days in the same term, in respect to the matter in controversy. The record of the first day states, that the appellant produced in Court a commission, signed by a majority of the Judges of the General Court, appointing him Clerk; also, a certificate from the Clerk of Bote-tourt County, of his having taken the oaths prescribed by law; but not offering sufficient security, &c. the Court proceeded to appoint Erasmus Stribling, &c.
Upon this part of the return, the Judges having certified from the record that the appellant produced in Court a commission signed by a majority of the Judges, but not saying whether the same was under their hands and seals as the law directs, it might have been doubtful to the General Court, whether the commission was granted in such manner as the act directs; in such a case we are told by Judge Buller, that the Court will issue a conditional mandamus, in order that the right may be tried upon the return, (b) If, then, there were no other reason than this one, for refusing the writ of mandamus, the General Court ought to have granted it; and then upon the return, the appellant might have traversed that part of the return which describes the commission, and averred that it was granted under the hands and seals of the Judges. And if upon issue joined it had been so found, he would have been entitled to a peremptory mandamus, if there were no other cause for refusing it.
The record of the first day proceeds to state, as I have already noticed, that the appellant also produced in Court a certificate from the Clerk of Botetourt County, of his having taken the oaths prescribed by law ; but, not offering sufficient security for the faithful performance of the duties of the said office, the Court proceeded to appoint Erasmus Stribling, &c.
The sufficiency or insufficiency of the security which the appellant offered, being a question of fact, upon which the Judges of the District Court had a right to exercise their discretion, but, in which, they may nevertheless *have been mistaken, the question as to the appellant’s right is thereby rendered doubtful: therefore, according to the authority above cited, if there were no other reason for refusing the mandamus, the Court ought to have granted it, that it might have been tried upon the return, whether the security offered was in fact, sufficient or not.
The record of the fourth day states, that the appellant again appeared in Court, and offered sufficient security, of which the Court took time to consider; and the next day the Court refused to admit him to the said office of Clerk, because on the first day he offered insufficient security, and acknowledged he was unable to find further security on that day; but alleged that at a future day he should probably be able to obtain sufficient security.
This brings us to the question, so much agitated and discussed, whether the District Court were authorised to appoint another Clerk, in case the Clerk appointed by the Judges of the General Court, either should neglect, or be unable to give security as the law requires, on the first day of the term.
It will readily be admitted that the reasons assigned by the Judges in the latter part of their return, are very strong in favour of their opinion respecting the necessity of holding a Court, and proceeding upon the business of the District, criminal, as well as civil, on the first day of the term. And their reasons for not appointing a Clerk pro tempore, are perhaps strictly legal, and well founded. The question, however, still remains, whether the appellant had not a right to offer sufficient security at any time during the term, and that having in fact offered it on the fourth day of the term, instead of the first, the Judges ought, or ought not to have received the same, and thereupon to have admitted him to exercise the duties of his office. This question depends upon the act which prescribes the manner in which Clerks of the District Courts are to be appointed; which declares “that every person appointed Clerk of any District Court, having taken the oath for giving assurance *of fidelity to the Commonwealth, and the oath required to be taken by Clerks of Courts, adapting the same to the District Court, shall thenceforth be enabled to execute the duties of his office.” The appellant produced to the Judges of the District Court, on the first day of the term, a certificate that he had strictly complied with this injunction of the law: he had been duly authorised thereby to execute the duties of his office, from the 12th of February to that period. If an officer be created by letters patent, (and commissions are letters patent,) he is a complete officer before he is sworn, and before any investiture. (c)
But the appellant had been sworn, and *576 had been for more than a quarter of a year duly authorised by the express words of the law, to execute the duties of his office; he was (if duly appointed, of which hereafter) Clerk de jure and de facto; like a spiritual Clerk in holy orders, who having- been duly presented, instituted, and inducted, into a rectory, is in full and complete possession, and in legal phrase is called parson-impar-sonee. The duties of his office, means all the duties of it, as well in Court as out of Court; nor can the risk of misconduct for a few days under the immediate eye of the Court, bear any comparison with that which may be supposed to arise, from a Clerk’s performing the duties of his office, without being subjected to such an immediate superintendence and inspection, for a quarter, or half a year, as the law allows.
The appellant having produced to the Court such a certificate as the law directs, the Courts were bound to enter the same of record. This was all that was necessary to be done at that time: it would thence appear of record, that he was duly commissioned, and had done and performed all that the law required, to enable him to execute the duties of his office; no ceremony of admission or induction was necessary, no additional oath was required to be taken.
But it is objected, he did not, nor could not give sufficient security for the faithful performance of the duties of his *office, on the first day of the term.
Bet us consult the law, and be guided by the spirit as well as the letter of it.
Every person appointed Clerk of a District Court, may take the oaths required to be taken, previous to his entering upon the execution of the duties of his office, before any Court of Record in the Commonwealth, after which, or in the emphatical words of the law, from henceforth he shall be enabled to execute the duties of his office; a certificate of which qualification shall be entered of record in the District; “wherein, at the first session, he sh.all, moreover, enter into bond with sufficient security,’’ &c.
It is contended that the words at the first session, must mean the first day; but I see no reason for that construction any more than the first hour, or the first minute. The term session, when applied to Courts, means the whole term ; and in legal construction, the whole term is construed but as one day, and that day is always referred to the first day or commencement of the term; and this construction has been carried so far, that where parties had covenanted to levy a fine at .the next term, and one of the parties died after the first day of the term; and the fine was entered at a subsequent day of the same term, this fine was held to be well levied, notwithstanding one of the parties was dead at the time; he being living on the first day of the term, and the whole term considered as one day. It is the same with a judgment in any other case, (a) In the present case, such a construction, appears to me to b.e very reasonable. The securities of a Clerk might reside at a distance from the Court, and might not attend the first day; the Clerk himself might not, from sickness, or other sufficient cause, be able to attend; the Court might be dissatisfied with the sufficiency of the security offered, but upon further information be satisfied with it; or the Clerk, as in the present case, might, at a future day, be able to offer additional security, to the full satisfaction of the Court.
Ought a man to be ousted from his office under such circumstances, although the law had permitted him to exercise it for half a year before, without any other security *than his integrity, his oath and his conscience? I have before stated that the comparative risk of misconduct in the presence, and under the immediate inspection and controul of the Court, was very slight in such a situation. And should he neglect to produce ' sufficient security before the end of the term, such neglect would undoubtedly be a cause of forfeiture, and he might be immediately proceeded against, and evicted, as the Constitution and the law direct. The requisition of the law that a Clerk is to give bond with sufficient security, for the faithful execution of the duties of his office, is a condition in law, and it is to be construed as a limitation ; his office would legally terminate with the session, (b) but not before.
This may be compared to the case of a parson, who may neglect after institution and induction to read the liturgy and articles of the church, or make the declarations against popery, or take the adjuration oath ; or may absent himself sixty days in one year, from his benefice, in certain cases. In all which cases, we are told, the benefice is void.(c) Still both the law and the Constitution, required that he should not be ousted of the office in which he had a freehold, but by due process of law. (d) The Judges of the District Court, probably, did not consider him as duly invested with his office, until he had given bond and security. Upon that point, I feel myself constrained to differ with them. On this point, then, I am clearly of opinion, that the appellant ought to have been admitted to give bond and security at any time during the session.
We now come to one of the principal stumbling blocks opposed to the emanation of the writ of mandamus, by the counsel of the appellees. They tell us, that if a mandamus be awarded, Mr. Stribling will be turned out of office, without that due proc-cess of law, which the Constitution and the acts which I have before referred to, prescribe; and a distinction was taken between a mandamus to admit and one to restore a person to an office. The former, it is said, gives only a legal, not an actual possession; though in a mandamus *to restore, the Court will go further; and for this 1 Strange, 538, and 3 Burr. 1267, were cited and relied on.
In the latter case however, the Court granted a mandamus, although there was another person actually in office; and although the right claimed, was barely a legal right, but perhaps not, in strictness, a public office. But the question now before us, concerns an im *577 portant public office, which concerns, or at least is necessary, to the administration of justice. Shall we, then, in such a case, be deterred from pursuing- that course which will most effectually advance justice, and preserve right? But we are told, Mr. Stribling ought to have been served with notice of this motion, that he might contest the rule. It was properly answered, that the return shews he had notice, being attested by him; and the record shews he did appear in the General Court as a party, and consent to the award of a commission to take depositions: what need then of further notice?
But another objection has been insisted upon, that although the General Court might have been of opinion, that they ought to have granted a writ of mandamus, they could not have granted the proper writ in this case, being tied down by the terms of the rule. But can it be seriously supposed that this objection can prevail in a case which concerns the general administration of justice, over a very large portion of the Commonwealth, wherein all due expedition ought to be observed, and where (in my opinion, at least) no other specific or adequate remedy can be found? Can it be seriously contended, I say, that, if, upon the return of the rule to shew cause, it should appear, that there were circumstances in the case which might render it necessary and proper, in order to fulfil the intentions of the law, and to do strict justice between the parties, in some measure to vary the terms of the writ, from those of the rule, the Judges of the General Court were bound rather to discharge the rule, than to accommodate the terms of the writ to the nature of the case, in order to do strict right and justice, and put an end to a contest, injurious *not only to the parties, but to the public in general? I revere the maxim est boni judicis ampliare justitiam; and where the general weal requires it to be done, as far as in me lies, I shall endeavor to conform to it. I think, then, the General Court might have awarded the writ, in terms commanding the Judges of the District Court to receive bond from the appellant, with the security offered by him on the fourth day, or such other sufficient security as he might offer, during the next succeeding term, and thereupon to restore him to his office of Clerk, or to shew cause to the contrary. Nor can I pereive the smallest inconvenience which such a departure from the words of the rule, could have produced, either to the public, or to the parties.
Hitherto I have considered this case, as if it had appeared by the return that the appellant had been duly appointed, by a majority of the Judges of the General Court; by commission under their hands and seals, granted by them to supply a vacancy, in the office of Clerk of the District, which had happened since the last session of that Court, by the death of Samuel Dew, sen. the late Clerk, in vacation; all which circumstances, I hold, ought to appear upon the face of the commission, or the same will be void.
Wherever the right of granting and creating new offices is vested in the king, as the head and fountain of justice, he must use proper words for that purpose; as in the erection of a new office, the words, erigimus, constitutimus, &c. must be made-use of; and it hath been adjudged, that the word concessimus is not sufficient, unless, there be an office, already in being, (a)
An office being a thing which lies in grant, cannot regularly be granted but by deed, duly executed. 1 Leon. 219, Gawton and Lord Dacres. Where the form of the words of nomination to the office of Clerk of the peace by the Custos Rotulorum of the County, were, ‘ ‘I do nominate the said Philip Owen to be Clerk of the peace, according to the act of Parliament,” which was held good, the Court *of King’s Bench reversed that judgment, because he did not name any County certainly, of which he should be Clerk, (although the nomination was in open Court,) nor distinguished which statute he intends ; for there are two statutes which concern this matter, (b)
A commission is a delegation by warrant of an act of Parliament, or of the common law, whereby jurisdiction, power, or authority is conferred to others. They are like the king’s writs; such are to be allowed which have warrant of law, and continual allowance in Courts of Justice, (c)
In the reign of Edward III. the Justices were so careful, that no innovation should creep in concerning commissions of oyer and terminer, that certain Justices, having their authority by writ, where they ought to have had it by commission, though it were of the form and words that the legal commission ought to be, John Knivit, Ch. J., by the advice of all the Judges, resolved that the said writ vras contra legem. And whereas divers indictments were before them found, all that were done by colour of that writ were damned, (d)
In England, as I have before shewn, the king’s commissions 'are by letters patent, under the great seal, and are matter of record, and as such are evidence (or rather the highest evidence) in themselves. It is the very act which delegates an authority, and therefore ought, upon the face of it, to shew every thing that is necessary to its validity and perfection; and ought to contain apt words for that purpose; otherwise it may be void for uncertainty; it should, moreover, conform to the direction of the law, and constitution of the state.
The Constitution, art. 18, directs, that commissions and grants shall run in the name of the Commonwealth: this paper does not. Whether it were competent to the Legislature to authorize any commission whatsoever, to be granted in any other manner or form than the Constitution prescribes, is not necessary now to be determined; having given no directions concerning the tenor of the commission, *it ought, I conceive, to conform to the directions of the Constitution.
The Judges of the General Court having no power, (except by law, to appoint Clerks *578 of the District Court,) their authority ought to appear, upon the face of the commission. It ought, moreover, to appear upon the face thereof, that they were not only Judges of the General Court, but a majority of them.
It ought to have appeared that Samuel Dew, sen. died between term and term, and that the commission was granted to supply the vacancy so happening in vacation, because the law prescribes another mode of appointment, if the vacancy happens in term time.
It ought to have contained words of grant or delegation of authority, as “we do appoint,” in the first person; thereby manifesting this to be their act of delegation; whereas the paper only certifies, that the appellant is appointed, not specifying when, or by whom, or by what authority. Any man, who knew the fact, might grant such a certificate, and it would, in my opinion, be just as good evidence in a Court of Record as this paper. ,
The nature and tenure of the office ought, moreover, to have appeared upon the face of the commission ; the same being grant-able during-good behaviour; whereas upon this paper it might be made a question whether it were such an office, or one during pleasure or otherwise.
The law having in one section, and upon one occasion, authorised an appointment to be made by certifícate(a) and in the very next section having directed, that the appointment, in all other cases,.and all future occasions, shall be made by commission, we must believe the Legislature both understood and intended a difference between them; and so the Judges understood it upon some other occasions. (1)
*I think it highly probable, that the appellant’s ardour and haste in pursuit of his appointment, induced him to prepare this instrument for the signature of the Judges, before he applied to them respectively for an appointment, and that without examining the law, as they would otherwise undoubtedly have done, they subscribed their names to the instrument so presented. The very high respect and esteem I entertain for the whole of that most worthy and respectable *Bench, induced me to make this conjecture, as to the error into which, I apprehend, they have inadvertently fallen.
Conceiving, therefore, that the paper which is spread upon the record, as the commission which the appellant presented to the District Court, is not a commission, as the law requires, I am of opinion that the judgment of the General Court refusing the writ of mandamus, ought to be af-frmed ; the appellant not having shewn any legal right to the office he.claims.
*JUDGE ROANE. I will first inquire whether a mandamus is a proper remedy in this case; and secondly, whether, on the merits, the appellant is entitled to succeed in his application.
*579 It is agreed on all hands that this writ (which, in England, is considered as a prerogative writ) lies to admit or restore to an office which concerns the administration of justice; and that, in various other cases, it ought to go, on reasons of public policy and convenience. In no case can those reasons apply with more force than in the present, where it is not only important that the rightful officer should enjoy his franchise, but, also, (in a public point of view,) have possession of the records, and administer the duties of his office. It is important, too, that the most speedy decision should be given on the subject, as is manifest from the course adopted by this Court in taking up the cause out of turn; and, as conducive to that end, the most direct remedy should be pursued, which is consistent with justice and the policy of the laws. It is agreed that a mandamus will lie where a party has a legal right, and no other specific remedy, or a specific remedy (as an assise) which has become obsolete. This remedy by assise, is considered in 5 Bacon, 197, as perhaps the only specific remedy in this case; and it will not lie unless the party has had a seisin of his office: (ibid.) it was always, therefore, an incompetent remedy, in cases where a party requires to be admitted to an office, to which his title has not been perfected by a seisin. An information in nature of quo warranto, whether considered as under the statute of Anne in England, or as at the common law, it is not in itself a specific remedy: it only paves the way for the introduction of a specific remedy, by producing a judgment of ouster against a person actually in possession of the office: and the principal differences between these two modes of proceeding are, that the common law information does not go without the intervention of the prerogative, (in England,) whereas, under the statute of Anne, an information may be brought, in relation to Corporation disputes, without the leave of the Court, at the '"'instance of any relator;(a) and also that the statute of Anne has provided for a speedy hearing, &c. (b) On general principles, therefore, it would seem to be more proper, (or rather less objectionable,) to turn over the party to his private and more speedy remedy under the statute, than to the common law information, which he cannot use without the intervention of the prerogative, or the permission of the Attorney-General, and the proceedings on which are, perhaps, more dilatory than in the other case.
It seems admitted by the course of the argument in this case, or, if not, it is extremely clear, that a mandamus will lie to restore, as well as to admit, to an office like the present; but it is contended that, where the office is full, the mandamus ought to be preceded by an information to try the right, and produce a judgment of ouster. Eet us examine this position. It seems at least questionable, whether all the English cases in which this position has been taken, have not been bottomed upon the statute of Anne, and therefore, not only had relation only to Corporation disputes, which alone are embraced by that statute, but would not apply in this country, where we have no similar statute. If the course adopted by those decisions be reasonable, considered in that relation, it does not follow that it is equally so in relation to the common law informations, and to offices in general. But, even in England, under the statute, and in relation to Corporation disputes, it is not an universal proposition that the mandamus must be preceded by an information, where a person, as officer, is in actual possession: it is said that in cases where his right is doubtful, and “fit to be tried on an information in nature of quo warranto,” the mandamus ought not to go i.n the first instance; but otherwise where the election is merely coloura-ble, and the "office is clearly void. The cases of The King v. Bankes, The King v. Barker, &c. are cases in which the mandamus went in the first instance, although the office was full. But it is said that the authority of these cases is done away by the decision in The King v. The Mayor of Colchester, (c) in which it was said to be a decisive answer to an application *for a mandamus, that there was another remedy by information in nature of quo warranto, by which the title of the person in possession of the office could be tried, as well as on a mandamus ; and that the consequence of the rule contended for in that case would be, that a second person would be admitted to an office already filled by another.
The decision in that case does not overrule those just mentioned, when we have reference to the correct rule of construction, that general expressions in a decision shall be expounded by relation to the actual circumstances which exist in the cause. In the case of The King v. Colchester, as the legality of the votes given at the election was disputed, it was a case of doubt, and “fit to be tried on an information,” and therefore, expressly comes within the distinction taken in The King v. Bankes, &c. Wherefore, then, shall we overrule that whole series of cases, without necessity and by a side wind? Wherefore shall we say that in all cases, (in cases in which there is no doubt,) an information is an indispensable prerequisite? As to the consequences, thus spoken of, in the case of The King v. Colchester, the existing officer must always be a party to the rule:(d) his claim would, therefore, be tried, and consequently complete justice be done; and the peremptory mandamus would, in effect, operate as a judgment of ouster.
I take it, therefore, that even in England, and in relation to cases within the statute of Anne, the possession of the office by another is no impediment to a mandamus, where the title of the applicant is clear; where the title of the incumbent is clearly void; and where no utility can result from a trial on a quo warranto information; and, a fortiori, in this country, where the proceedings by information is not guarantied to every citizen, but must be pursued, if at all, by permission of the Attorney-General under the common law.
*580 In this case, (as I shall presently attempt to shew,) the title of Dew to his office was complete, and the election of Stribling was clearly void under the law, and the case involves no facts which were necessary to be tried on an information : *besides, the right of Stribling (as he must be a party to the mandamus) could as well be tried on a mandamus as on an information, especially under our act of 1799, (a) regulating the proceedings incases of mandamus. The effect of a peremptory mandamus to restore, will be equivalent to that of an actual and previous judgment of ouster; and, if there be any irregularity in this mode of proceeding, it is abundantly overpaid by the consideration that the end is much more speedily attained by this remed}', than by the intervention, in the first instance, of an information in nature of quo warranto.
As to the objection to the form of the rule in this case, it being to admit, whereas I am of opinion it ought to have been to restore, there is nothing' in it. Many cases were cited to shew (and, if there were none, I should readily sanction the power in the Court, considered as res nova) that rules may be changed and modified so as to square with the rights of parties, and to attain the real justice of the case. As to the proceeding being ex parte in relation to Stribling, it appears, on the record, that he is in reality a party to the rule, has examined witnesses, and, I suppose, employed counsel: but, if this were not the case, he must be made a party to the mandamus, when it issues, or, rather, he must (by its service on him) be apprised of it, and thus enabled to defend his rights; which rights would otherwise, perhaps, not be barred. It is as desirable to a Court of Daw, as to a Court of Equity, to avoid circuity, and to come at the substantial justice of the case as soon as may be; and, to that end, the Courts of Daw will modify and adapt the course of their proceedings so as to attain the desired purpose.
On the merits of this case, I am clearly of opinion, (whether considered only on the returns to the rule, or on the whole evidence,) that Dew was a complete Clerk; (admitting the authenticity of his commission and certificate of qualification;) that Strib-ling was appointed wholly without authority ; and that all this appearing by a mere reference to a general law on this subject, and the controversy *in this case involving no other facts, than the existence of the commission and the qualification by taking the oath, the General Court was entirely competent to decide on the motion for a mandamus in the first instance, and need not, as a preliminary have referred the case to any other Court or tribunal.
Dew was a complete Clerk. He was appointed by a.majority of the Judges of the General Court, in vacation, and had taken the oaths of office as required by law; and thenceforth he was “enabled to execute the duties,” (i. e. all the duties) “of his office.”(b) The criticisms of the appellant’s counsel, on this point, are entirely satisfactory; and I adopt their construction of the act, without repeating the grounds of it. As to inconvenience, there is no great injury or inconvenience resulting to the public or to individual citizens, from indulging the Clerk, yet a few days longer, to give security, and the words of the act are fully competent to give him the whole term after his appointment for that purpose. The latitude of the. expressions of the act, especially as there may be also in-conveniencies and hardships under a contrary construction, must preponderate in the case.
As to the objections to the commission, in the present case, (taken for the first time from the Bench,) I think there is nothing in them. It is said that the commission is void, as not being pursuant to-the Constitution ; and that it is also a fatal objection, that the commission itself does not specify the character of the grantors, and state in precise terms the tenor and extent of the authority granted. As to the first ground of objection, which is, more particularly, that the commission does not run in the name of the Commonwealth, the answer is, that this is only requisite in-commissions emanating from the executive authority, and which are to be tested by the Governor under the seal of the Commonwealth. This provision in the Constitution, does not necessarily extend to particular trusts or authorities, which, it may be provided by law, shall How from *other sources. In fact,' I now have in my hand, two commissions of different Clerks of District Courts, in which this is omitted, though the commissions seem to be in other respects full and perfect ; and it is presumed that no commission now existing under the District Court lawr would stand the test of this objection.
As to the other objection, it is said that the commission in question does not state that the grantors were Judges of the General Court. The answer is, that this is not particularly required by the act; that it is a notorious fact, apparent on almost every page of the District Court records, who are the Judges of the General Court, as the allotments of Judges to the several District Courts, as made by the Judges of the General Court, are, I believe, recorded in the former; and that this Court does take cog-nisance of and admit that fact in a variety of instances.
We know as well, in this case, that the grantors are Judges of the General Court, as, (for example,) in the ordinary case of grants of supersedeas by those Judges, the award of which never states their quality or character of Judges of the General Court; and yet, notwithstanding the power of granting writs of supersedeas to the judgments of the County Courts is given to the Judges of the General Court only, an objection on account of this omission has never been taken, or, if taken,, would be indubitably scouted by this Court. It is also objected that this commission should appear to have been granted by a majority of the Judges of the General Court: The answer is, that it is granted by six Judges; and we know by the general law of the land, that there are only ten Judges in that *581 Court. Again, it is said that this commission is insufficient, as it only uses the words “is appointed,” and omits the usual technical words “do hereby constitute and appoint,” &c. The answer is, that this is essentially equivalent; and in 3 Bac. Abr. 387 (Gwil. edit.) the words dedi et concessi are said to amount to a grant. Again, it is objected that the commission does not guaranty the office during good behaviour: The answer is, that the Clerk, when appointed, has this tenure by a paramount authority; by the terms of the *act itself, which have expressly sanctioned this tenure. But what has considerable weight with me, in relation to the sufficiency of this commission, arises out of the original act of 1788, on this subject. By that act, a certificate of appointment by the majority of the Judges, accompanied by a qualification by taking the oath of office, completely constituted the original Clerks; and the act further providing for the case of a non-attendance by the Judges on the day appointed for this purpose, or for vacancies thereafter happening, directs that, in these cases, a .majority of the Judges shall appoint by commission under their hands and seals. Now, it would seem reasonable, (as there is no good reason why there should be more particularity in the one case than in the other,) that the ■“commission” here intended should receive its character, except in relation to the seal, {which is expressly required by the act,) from the “certificate” prescribed in relation to the original Clerks, and that as much generality should be tolerated in the one case as in the other. But I go upon this still broader ground, that I am unwilling to defeat or overthrow the rights of our citizens, when substantially conferred and granted, upon mere technical objections; upon objections so extremely nice and subtle, that they have never occurred to, or been taken by, any of the opposing counsel, in either of the Courts in which this case has been so copiously and ably discussed. In this case, the office of Clerk is granted by those who are known to us, ex officio, to have competent authority; and the general law upon the subject comes in aid of any expressions, otherwise too general, and defines the tenure and extent of the authority in question.
From the foregoing considerations, it appears that no vacancy of Mr. Dew’s office had happened at all, and consequently none accrued during the session of the District Court, without which the Judges of the District Court had no power to appoint another. Mr. Stribling, therefore, clearly appears to us (admitting the existence and legality of the commission and certificate before mentioned) to have no manner of title to the office.
*With respect to the merits of this case, as disclosed by the testimony, I am of opinion, that the District Court erred in their construction of the law, on the day in which Stribling was appointed. The Court would neither suffer Dew to act as Clerk without giving security; allow him a reasonable time to obtain personal security, to the amount required; (and any man might be placed in his situation by the failure of his friends to attend on the first day of the Court;) nor admit sureties whose landed estate was amply sufficient.
I am of opinion, that landed property ought to have been taken into the account. I ground this opinion on the established doctrine as to justifying bail. In 3 Bl. Com. 291, it is held, that those justifying as bail must swear, that they “are worth” the full sum, after their debts are paid. By analogy to this case, and seeing no ground for excluding the real estate, I think the District Court erred, in confining their inquiries to the personal estate only. 1 am also of opinion, that Dew ought to have been permitted to act as Clerk without giving security; his failing to do which, however,' during the whole of the term, would probably have subjected him to the loss of his office.
In every view, therefore, which I have been able to take of this case, I am of opinion, that the judgment of the General Court is erroneous; and that a mandamus ought to go to restore Dew to his office, of which he was completely invested by the commission and certificate of qualification; to be served, also, on Stribling, who will thereby have an opportunity to defend his possession and his title, and possibly to vary the case as it now appears to us. It is only upon the present aspect of the case, as disclosed by the testimony, that the opinion now pronounced has been founded.
JUDGE FLEMING. Three questions seem to be presented in this case, and I shall consider, first, whether the commission of Samuel Dew, presented by him to the District Court held at the Sweet Springs, on the 18th day of May, 1805, was of sufficient validity to authorise him to exercise the office of Clerk of the said Court.
*2d. Whether he ought to have been allowed a further time, during that session of the court, to give such bond as the law required, before another Clerk should have been appointed; and if so,
3d. Whether his proper remedy of redress be by mandamus.
The counsel for the appellees stated, and argued the two latter points only; because, perhaps, had they urged the former against the appellant, they would have trodden on tender ground.
The substance of the acts of Assembly, so far as they apply to the case before us, have been so fully stated, that it seems unnecessary here to recite them, and I shall proceed briefly to state, what I conceive to be the true, rational meaning of the word commission ; without recurring to the subtleties, and nice distinctions, of ancient English writers, in times of high regal prerogative, and my definition of it will be very short.
I take a commission to mean a warrant of office, a written authority or license, granted by a person or persons, duly constituted by law for the purpose, to a public officer, empowering and authorising him to execute the duties of the office to which he may be appointed; and where there is no particular form of such commission prescribed by law, those who are constituted for the purpose, may use such form and language as to them may seem proper; so *582 that the purport of such commission be clearly understood.
It is said that the commission of Mr. John Robinson, Clerk of the District Court of Richmond, (a copy of which is before me,) is a proper one. • That 3s readily admitted; but it does not thence follow, that the one now under discussion is not of equal validity, because it is less formal and more concise. Four of the six Judges who granted the former, have put their hands and seals to the latter, with the addition of two other Judges; and although they do not therein style themselves Judges of the General Court, the records of that Court, in many instances, prove them *to have been so, and I can neither suppose them ignorant of what they were doing, nor that they meant to ensnare a man whom they were appointing to an office of great importance to a large portion of the community, and of hjgh responsibility respecting" the officer himself, and who (acting under it) would have been as amenable for misconduct in office, as if his commission had filled a whole sheet of paper.
Let the paper before us be called a certificate, a testimony in writing, or what it may, it has, in my judgment, the true essence of a commission ; and having been granted by a majority of the Judges of the General Court, appointed by law for that purpose, Samuel Dew, by virtue thereof, so soon as he had taken the oaths prescribed by law, and obtained a certificate of the same from a Court of Record, had, in my conception, full power and lawful authority to exercise the office of Clerk of the District Court, at the Sweet Springs, which he did exercise (being thus duly qualified so to do) from the 12th day of February, till the 18th day of May, 1805, when, it appears to me, he was superseded, and Erasmus Stribling appointed Clerk in his room, contrary to law. The Court that made the latter appointment, found no fault with Dew’s commission, (for so it is properly called in the record of that Court,) which states it to have been signed by a majority of the Judges of the General Court; and the same record states, that the commission certified by the County Court of Botetourt, where Dew took the oath required by law, was under the hands and seals of the Judges, and so it appears, a copy of the commission being spread upon the record; but the Court rejected and superseded him, merely because he was unable to give satisfactory security, on the first day of the session, and appointed Stribling Clerk (as appears by the testimony of some of the witnesses) about three o’clock on the same day. This, to me, appears to have been precipitate indeed.
Should this Court decide, that Dew had no legal authority to act as Clerk between the 12th day of February and *the 18th day of May, 1805, all his official acts must be null and void, and be subject to an action for every capias and execution issued by him during all that time.
Cet us next examine by what authority Stribling was appointed Clerk. Two oases only occur to me in which a District Court I is authorised to appoint a Clerk: (except a Clerk pro tern., where the existing Clerk cannot attend:) one case is, where a vacancy shall happen during the session of a Court, and the other is where the Judges of the General Court shall neglect to supply any vacancy until the ensuing session of the District Court, in which the vacancy shall be. Neither of which was the case when Stribling was appointed Clerk.
I proceed to consider, secondly,- whether Dew ought not to have been allowed the whole term or session, to give bond and security for the faithful performance of his duty, admitting, for argument sake, that the security offered on the first day of the session, was insufficient; and here I must have reference to the 13th section of the District Court law, wherein it is declared, that every person appointed Clerk of any District Court, having taken the oath for giving assurance of fidelity to the Commonwealth, and the oath of office, shall thenceforth be enabled to execute the dutie's of his office, which oaths may be taken before any Court of Record in the Commonwealth, and a certificate thereof shall be entered of record in his district, wherein at the first session after his appointment, he shall moreover enter into bond with sufficient security, payable to the governor, and his successors, &c. &c. with the condition for the faithful performance of his duty.
The counsel for the appellees argued the point upon different grounds. Mr. Johnson and Mr. Wirt, pointing out the great inconvenience, loss, and probable ruin, that might have been sustained by individuals, should Dew have been permitted to exercise the office a few days in term time, without giving the security required by law;,but did not advert to the circumstance, that he had alreády, agreeable *to law, exercised the office for more than three months, when he was under no controul whatever, and for the few days he requested indulgence till he could find security, he would have been acting under the immediate eye . and inspection of the Court, when no inconvenience or injury could have been justly apprehended. Mr. Hay,(1) however, rested the point, principally, upon the words, and strict letter, of the law, contending that the word at, means commencement, and therefore that Dew was bound to tender security, and enter into bond, the moment the Court was opened on the 18th of May, otherwise he forfeited the Clerkship.
According to what I deem to be the true construction of the clause, which requires a Clerk at the first session of the Court, after his appointment, to enter into bond with sufficient security, he ought to be allowed the whole term, or session of the Court, to provide and give the security so required; which, if he tenders it at the last hour of the session, the Court is bound to receive, take his bond, and enter it upon the record: which, in my apprehension, would be a due compliance with the object," intention, and even with the letter of the *583 law. But had the appellant, Dew, failed to give, or tender the security required, during the session, the office would then have become forfeited and vacant, and might have been supplied as in cases of ordinary vacancies.
3. On the third question, whether the appellant’s proper remedy be by mandamus, I shall say but little, the subject having been already amply elucidated. The point was very Cully and ingeniously argued at the bar, on both sides; when the counsel for the appellee took a distinction between a case where an officer is seeking to be admitted, and one where he is seeking to be restored to an office; and insisted that in the former case, his proper and only remedy, is by information, in the nature of a quo war-ranto; and therefore (that remedy *being complete) a mandamus will not lie; but seemed to admit that, in the latter case, the party might proceed by mandamus. I cannot, I own, perceive the force of the distinction, being of opinion, from a number of authorities in the books, that where the important office of Clerk of a Court of Record is the object, a mandamus is the proper remedy in either case. But admitting the argument and distinction to be correct, and to give them their full weight, they do not apply to the case now under consideration; because the appellant is seeking to be restored to an office he has once exercised and enjoyed, and of which he has been wrongfully deprived.
On every view of the case then, I am of opinion, that the General Court erred in discharging the rule, and that a mandamus ought to be awarded to restore the appellant to the office of Clerk of the District Court, at the Sweet Springs, on his giving bond and security as required by law; 'as was done in the case of James Bland, who. in the year 1786, was by mandamus restored to the office of Clerk of the County Court of Westmoreland; the record of which is now in Court; and this is the opinion of a majority of this Court.

 Bull. N. P. 199.

 2 Blac. Com. 346.

 3 Blac. Com. 110.

 3 Blac. Com. 110.

Ob) Bull. N. P. 200.

 5 Bac. Abr. Gwil. ed. 188, tit. “Offices and Officers,” letter E.

 7 Term Rep. 20, Bragner v. Langmead.

 2 Black. Com. 155.

 1 Black. Com. 498.

 L. V. ed. 1794, or Rev. Code, vol. 1, c. 15, p. 18, Ibid. c. 66, s. 14, p. 75.

 5 Bac. Abr. Gwil. edit. 188, tit. Offices, &c. letter E.

 a Salk. 467, Saunders v. Owen, cited in Bac. Abr. Offices, (E.)

 4 Inst. 163, 3 Inst. 656.

 4 Inst. 164, Bro. Abr. Commissions, 16.

 See Acts of 1788, c. 67, s. 19, 20, in which this distinction is most obvious and incontestible.

 Extract from the act of 1788, intitled “An act establishing District Courts, and for regulating the General Court."
Sect. ID, (p. 31, of Sessions acts.) “The Judges of the General Court shall forthwith assemble at the Capitol in the City of Richmond, on a day to be appointed and notified to each Judge, by the Governor, with advice of the Council, and they, or such as shall meet, provided the number be five, shall proceed by a majority of votes, to appoint a Clerk for each District Court, making a list of the several appointments, to be returned to, and entered of record in the General Court at their next succeeding session. They shall also give to each Clerk elected, a certificate of his appointment, who having taken the oath for giving assurance of fidelity to the Commonwealth, and the oath required to be taken by Clerks of Courts, adapting the sam'e to the District Court, shall thenceforth be enabled to execute the duties of his office; which oaths may be taken by the Clerks respectively, either before the Judges so assembled, or any Court of Record in the Commonwealth; and a certificate thereof, as well as of the appointment of each, shall be entered of record in his District; wherein, at the first session, he shall, moreover, enter into bond, with sufficient security, in the penalty of three thousand pounds, payable to the Governor or Chief Magistrate, and his successors, with condition for the faithful performance of his duty; which bond may be put in suit for the benefit, and at the costs of any person or persons, aggrieved by the nonfeasance or misfeasance of the Clerk, as often as there shall be occasion, until the whole penalty shall be recovered or levied. Bach Clerk shall hold his office during good behavior; shall be removable on conviction upon an indictment or information, for misuser or nonuser in office, and shall reside and keep his office at the District Court-House of which he is Clerk, but when it is held alternatively at different Court-Houses, then he shall keep his office at the one or the other Court-House as he may think best.”
Sect. 20. 'Whensover there shall be a vacancy in the office of Clerk of any District Court, or if a number sufficient to appoint Clerks shall not meet at the Capitol, in the City of Richmond, on the day aforesaid, it shall be lawful for a majority of the Judges of the general Court to appoint by commission under their hands and seals. Provided, that when such vacancy shall happen during the session of a District Court, or the Judges of the General Court shall neglect to supply any vacancy until the ensuing session of the District Court in which the vacancy shall be, it shall be lawful for the Judges attending such District Court, to appoint a Clerk by commission under their hands and seals, which shall be as valid and effectual as if granted by a majority of the Judges of the General Court. And where the Clerk of any District Court cannot attend, it may be lawful for the Judges of such Court to appoint a Clerk pro tempore.”
Certificate of appointment granted to John Drown, under the 19th section of the acts of 1788, c. 67.
“We the underwritten Judges of the General Court, do hereby certify, that John Brown, of the City of Richmond, at a meeting held by us this day at the Capitol, in the City of Richmond, being the day appointed for the purpose, and notified to us by the Governor with the advice of council, was by a majority of votes appointed Clerk to the Court for the District composed of the Counties of Henrico, Hanover, Chesterfield, Goochland and Powhatan, and that the said John Brown before us assembled as aforesaid, did take the oath for giving assurance of fidelity to the Commonwealth, and the oath of Clerk of the said District Court, according to law.
“Given under our hands and seals this 9th day of February, in the year of our Lord 1789.
“James Mercer, (L. S.) Richd. Cary, (L. S.)
“Richd. Parker, (D. S.) James Henry, (L. S.)
‘Edm. Winston, (L. S.) John Tyler, (D. S.)”
“Cuth. Bullell, (D. S.)
Commission granted to John Robinson, under the 90th section of the act of 1788, c. 67.
"We the underwritten Judges of the General Court, being a majority thereof, pursuant to the power given us by law, do hereby appoint John Robinson, Clerk of the Court for the District composed of the Counties of Henrico, Hanover, Chesterfield, Goochland and Powhatan, in the room of Anthony Robinson, who hath resigned. To hold said office of Clerk of the said Court, during the good behaviour.
“Given under our hands and seals this sixteenth day of June, one thousand seven hundred and ninety-six.
“Joseph Prentis, (D. S.) Joseph Jones, (L. S.)
“S. G. Tucker, (L. S.) Wm. Nelson, jun. (L. S.) "John Tyler, (L. S.) Robt. White, (D. S.)”
—Note in Original Edition.

 3 Black. Com. 263.

 Ibid.

 2 Term Rep. 260.

 Rex v. Bankes and Rex v. Barker, ante.

 . Rev. Code, 1 vol. p. 393.

' Re v. Code, 1 vol. p. 75.

 The Reporters were not in Court when Mr. Hay’s argument was delivered. — Note in Original Edition.

 Bac. Abr. (Gwil. edit.) 808, Bex v. Mayor of Colchester. 2 Term Bep. 259.