## Case No. 9,672.

### MITCHELL v. WILSON.

[3 Cranch, C. C. 242.] [1]

Circuit Court, District of Columbia. Dec. Term, 1827.

DEED—GRANTING CLAUSE—HABENDUM—DEED OF SLAVE—POSSESSION—EVIDENCE OF TITLE—REPLEVIN—POSSESSION TAKEN BY DEFENDANT.

1. Whatever may be the words of grant in a deed, it is the office of the habendum, to limit and confine them, and to ascertain the commencement and duration of the estate created or conveyed by the deed.

2. A deed of bargain and sale was made, (and duly acknowledged and recorded,) by J. W. to his brother T. W., of a negro woman named Bet, and her increase, and a negro boy named Patrick, "from and after the date hereof," "with this reserve, that they are to remain with J. W. my father,—who is to hold and have the entire use and benefit of them during his life, and at his decease my said brother Thomas, his heirs, executors, administrators, or assigns, to take, hold and possess them ever after; to have, and to hold, the said negro woman Bet, and her increase, as aforesaid, and negro boy Patrick, (from and ever after the decease of my father, as aforesaid,) unto my said brother Thomas Wilson, his heirs, executors, administra-

tors, and assigns, with general warranty from and after the decease of my father, as aforesaid." T. W. died in the lifetime of the father. Held, that neither T. W. nor the father took anything by the deed.

3. The possession of a slave for twenty years, is primâ facie evidence of a good title in a plaintiff in replevin, against everybody who does not show a better.

4. If a replevin be discontinued, the defendant is not guilty of a contempt, in taking possession of the goods, they being no longer in the custody of the law.

Replevin for a negro woman named Mahala. This cause, which was discontinued at December term, 1826, for want of the defendant's appearance, was by consent of the parties, at May term, 1827 [Case No. 9,671], reinstated, with a mutual release of errors, and it was agreed that upon a motion for the return of the property, the whole merits of the cause should be decided. The motion to return the property was accordingly made.

Mr. Coxe and Mr. Ashton, for plaintiff in replevin.

Mr. Key, for defendant.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). This is an action of replevin, brought on the 15th of May, 1826, by Thomas L. Mitchell, against William Wilson, administrator of Thomas Wilson, for a female slave, named Mahala, about twenty-one years of age. Mahala was the daughter of Bet. On the 20th of July, 1787, Joseph Wilson, son of Lancelot, made a bill of sale of his slave Bet, then about six years old, and three other slaves, to his son Joseph Wilson, Junior, and his heirs and assigns, in consideration of £105 paid by him to, or for his father. This bill of sale was recorded on the 7th of August, 1787, but was never acknowledged. Joseph Wilson, Junior, was then about twenty-seven years old, had a wife and family, and lived in the same house with his father, who delivered the slaves to him, and who was an intemperate man, and in embarrassed circumstances, and for whom his son had paid debts to the amount of £105. The slaves remained in the joint family of the father and son until the father and son moved into separate houses in the same neighborhood, when the slaves, excepting Bet, remained with the son, but were often in the service of the father. Bet lived with the father, and was an idiot, lame, and worthless. On the 31st of December, 1801, Joseph Wilson, Jr., made a bill of sale, under seal, in consideration of £25, to his brother, Thomas Wilson, of Bet, then said to be about twenty-three years of age, "and all her increase, from and after the date hereof, and her son, a negro boy named Patrick, about eighteen months old; with this reserve, that they are to remain with Joseph Wilson, my father, who is to hold and have the entire use and benefit of them during his life, and, at his decease, my said brother, Thomas Wilson, his heirs, executors, administrators, or as-

[1] [Reported by Hon. William Cranch, Chief Judge.]

signs, to take, hold, and possess them ever after: To have and to hold the said negro woman, Bet, and her increase, as aforesaid, and negro boy, Patrick, (from and after the decease of my father, as aforesaid,) unto my said brother, Thomas Wilson, his heirs, executors, administrators, and assigns," with general warranty, "from and after the decease of my father, as aforesaid." This bill of sale was, on the day of its date, acknowledged before a justice of the peace in Prince George's county, and enrolled on the 2d of January, 1802. Bet continued in the possession of the father. In the spring of 1805, however, she was found, with her child, Mahala, then from six to nine months old, living in the family of Thomas L. Mitchell, the plaintiff, whose wife was the daughter of the said Joseph Wilson, of Lancelot, and sister of Joseph Wilson, Jr. Mahala continued in the possession of Thomas L. Mitchell, from that time until two or three days before this writ of replevin was issued; when the defendant, ·William Wilson, son of Thomas, having then recently taken letters of administration in this District, on the estate of Thomas Wilson, who died about the year 1805, probably before the birth of Mahala, and certainly several years before the death of his father, Joseph Wilson, of Lancelot, seized upon Mahala, and claimed her as part of his father's estate; in consequence of which seizure, Thomas L. Mitchell obtained this writ of replevin. On the 1st of February, 1806, Joseph Wilson, of Lancelot, by deed of bargain and sale, duly acknowledged and recorded, conveyed to Thomas L. Mitchell and his wife the slave Mahala, and all her posterity, she then being and remaining in their possession. Bet was always in possession of Wilson, the father, or of Thomas L. Mitchell, from the time of the separation of the families of the said Wilson and his son, Joseph, until the death of Wilson, the father, ·about fifteen years ago. Neither Bet nor Mahala was ever in the possession of Thomas Wilson, who lived in Ann Arundel county. Wilson, the father, and his son Joseph, lived in Prince George's county, near Bladensburgh. It does not appear how many children were left by Thomas Wilson nor of what age. If he died in 1805, the youngest must be now at least twenty-one years old. This is a motion by the defendant for a return of the property replevied; and it is agreed that the court shall, upon that motion, decide the whole merits of the case, without a jury.

On the part of the defendant it is contended that, by the deed of 1787, from the father to his son Joseph, the legal title of Bet was transferred to the son; and that, by his deed of 1801, it was conveyed to his brother, Thomas Wilson, and that Mahala, whether born before or after the death of Thomas Wilson, became part of his estate, which has never yet been legally distributed or settled. The possession having always been in Mitchell, the burden of proof is upon the defendant to show a better title. It seemed to be admitted by Mr. Wilson, in his testimony, that the possession of Bet always remained in his father until his death. But if the deed of 1787 were bona fide, and for a valuable consideration, that circumstance did not prevent the operation of the deed. The title was transferred to his son. Act Md. 1729, c. 8, § 5, for the relief of creditors against secret sales, does not make void the sale against any person claiming under the vendor; and Supplementary Act 1763, c. 13, applies only to gifts, not to bona fide sales. The fact of its being a bona fide sale, for valuable consideration, depends principally upon the testimony of the witness, the vendee, and the averment in the deed itself. He swears positively and unequivocally, that he paid upwards of £100 of his father's debts, and that such payment was the consideration of the deed. His testimony is corroborated by that of other witnesses, who have spoken of the embarrassed situation and bad management of the father, and, by the fact that the creditors of the father have never pursued this property in the hands of the son. An attempt has been made to discredit the general reputation of the witness for veracity; but, upon the whole, we think his credit is sustained, although there seemed to be a strong bias in favor of the defendant. We take the fact, therefore, to be, that the deed of 1787 was bona fide, and for a valuable consideration, and transferred the legal title in Bet to Joseph Wilson, the son. It is not so clear what was the effect and operation of the deed of 1801, from Joseph, the son, to his brother, Thomas. It purports to be for a valuable consideration, and bona fide, and is duly acknowledged and recorded; but did it pass a present interest to Thomas Wilson? It purports to bargain and sell the negro woman, Bet, "and all her increase, from and after the date hereof," and the negro boy, Patrick, "with the reserve, that they are to remain with Joseph Wilson, my father, who is to hold and have the entire use and benefit of them during his life, and at his decease my said brother, Thomas Wilson, his heirs," &c., "to take, hold, and possess them ever after: To have and to hold the said negro Bet and her increase, as aforesaid, and negro boy, Patrick, (from and ever after the decease of my father, as aforesaid,) unto my said brother, Thomas, his heirs," &c. Whatever may be the words of grant in a deed, it is the office of the habendum to limit and confine them, and to ascertain the commencement and duration of the estate created, or conveyed by the deed. Here, in the very terms of the grant, there is a reserve of the possession and entire use and benefit of them to the father, during his life; and it was uncertain whether Thomas would survive him, and, in fact, he did not. And it is further said, in the terms of the grant, that "at his," the father's, "decease," the brother was "to take, hold, and possess them." If he could not take,

hold, or possess them, nor have any use or benefit of them during his father's life, and he died before his father, did any thing vest in him by the deed? But the habendum is decisive. He was to have and to hold after the decease of his father. The estate was not to commence until the death of his father. He died before his father, and therefore the estate never did commence. Nothing ever passed from Joseph Wilson, Jr., by that deed. It created no estate in his father, because his father was not a party, and because there are no words of grant, or habendum, to the father. Thomas cannot be considered as holding the legal estate as trustee for the father, because the legal estate never vested in Thomas. It remained in Joseph Wilson, Jr.; and the contest must now be between his legal title and the possession of Mitchell, for the father having no legal title, could convey none, by his deed of 1806, to Mitchell, after the death of Thomas. The question remaining is, whether the long possession of Mitchell is a bar to the legal title of Joseph Wilson, Jr. Upon that point we should like to hear an argument.

At the adjourned October session of May term, 1827, the point was argued by Mr. Key, for the defendant, and by Mr. Jones and Mr. Ashton, for the plaintiff.

Mr. Key contended that the possession of a chattel does not give title. The statute of limitations is only a bar to the remedy, not to the right. It does not destroy the cause of action. If it destroyed the right, it would not be necessary to plead it. It might be given in evidence on the general issue. 1 Cranch [5 U. S.] Append. 466; Quantock v. England, 5 Burrows, 2628; Hodsden v. Harridge, 2 Saund. 63; Ballantyne, 188, 267. The only cases opposed to this principle are the Virginia cases, in which it has been decided that five years' possession of a negro gives good title against all the world. But they depend upon the peculiar statutes of frauds of Virginia, in respect to the transfer of negroes. They are a peculiar kind of estate, being neither chattels nor lands. They were formerly considered as real estate, subject to dower and curtesy; but in 1792 the legislature of Virginia enacted that they should be no longer real estate. The cases do not say that possession of any other chattel gives title. Newby v. Blakey, 3 Hen. & M. 57; Elam v. Bass' Ex'r, 4 Munf. 301; Garth v. Barksdale, 5 Munf. 101; Gay v. Moseley, 2 Munf. 545; St. Va. 1792, c. 103, § 49; Old Rev. Code, p. 192; 1705, c. 3. In 1725, they were exempted from execution for debt; and, in 1758, they could be only transferred by deed, or will, like lands. Old Va. Justice, 318; Taylor v. Horde, 1 Burrows, 119. Entry is necessary to maintain ejectment. Runn. Eject. 99. By the Maryland acts of February, 1777, c. 15, § 7, and 1780, c. 5, § 14, and Appendix 1782, c. 55, § 5, exceptions to the act of limitations may be given in evidence, on a general replication to the plea of limitations. In England, twenty years' possession of land gives good title, because the statute takes away the right of entry after that time, not merely the legal remedy; so that the statute of limitations need not be pleaded in ejectment. This case is to be decided according to the law of Maryland; and in Smith v. Williamson, 1 Har. & J. 147, it was decided that, in replevin, the statute of limitations must be pleaded; because it only goes to the remedy, not to the right.

Mr. Coxe and Mr. Ashton, contrâ. The court has decided that neither the plaintiff nor the defendant has a documentary title. The question, then, is, whether twenty years' possession of the slave is a good title for a plaintiff in replevin? The object of the statute of limitations is, to protect the possession under a title supposed to be good. It was founded upon great principles, and upon like principles has been expounded by the courts; and they have applied its principles to analogous cases, not embraced in the letter of the act. Thus, set-off may be objected to on the trial, if barred by the statute of limitations. Ballantyne, 94. When a party can plead it, he must; but when he cannot plead it he may give it in evidence. In trespass, as well as in ejectment, twenty years' possession gives good title. The same reason applies to chattels; and the same reason which applies to negroes, is applicable to any other chattel. Shelby v. Guy, 11 Wheat. [24 U. S.] 371; Brent v. Chapman, 5 Cranch [9 U. S.] 358. The supreme court did not rely on the statute of frauds of Virginia, but on the statute of limitations. This is a motion for a return of the property, with an agreement that the court may decide upon the whole merits of the case. If, then, the plaintiff could, in any way, plead the statute of limitations, it will be considered by the court as pleaded. While Mitchell had the possession, he had a good title, of which he could not be deprived by any legal process, or remedy; and there is no legal right without a remedy. Under the agreement in this suit, the plaintiff cannot be prevented from availing himself of the protection of the statute of limitations.

Mr. Key, in reply. If the act of limitations went to the right, it would be unconstitutional, because it would impair the obligation of the contract. The statute does not say, that the owner shall not retake his property, after the lapse of the three years which bars his action. A man who loses his goods, or whose slave runs away, may lawfully take peaceable possession of them wherever he can find them, and then holds them in all his original right.

THE COURT took time to consider until this term, and on the 2d of January, 1828, CRANCH, Chief Judge, delivered the opinion of the court.

This is an action of replevin for a female slave named Mahala. Upon a motion for a

return of the slave to the defendant, this court, at the last term, (May, 1827,) was of opinion that the legal title was not in the defendant, and it appeared that the slave never was in the possession of the defendant's intestate, nor of the defendant, except for two or three days before the writ of replevin was issued, when the defendant, claiming title as administrator of Thomas Wilson, took possession of her. There was no evidence of title in the plaintiff, except that he had been in possession of her, claiming title, ever since she was six or nine months old, when she and her mother Bet, were seen by the witness in the possession of the plaintiff; and the probability was, that Mahala was born in his possession, his wife being the daughter of Joseph Wilson, of Lancelot, the former owner of Bet, who was a crippled and worthless idiot.

The court, on examination of the evidence upon the motion for a return of the slave, was of opinion that the documentary legal title of Bet, at the time of the birth of Mahala, was in Joseph Wilson, Junior, the son of Joseph Wilson, of Lancelot, and requested an argument upon the question whether the long possession of the plaintiff, Thomas L. Mitchell, either gave, or was evidence of, such a title as would enable the plaintiff to maintain replevin against the present defendant, William Wilson, the administrator of Thomas. That argument was heard at the adjourned session of May term, in October. It was contended for the plaintiff, that such a possession as would have been a good bar to an action of detinue constituted a valid title against everybody. On the other hand, it was said, for the defendant, that there was no limitation against a man's taking possession of his goods and chattels. That the statute of limitations was a bar only to the action, not to the right. That it was not like the possession of lands, for in that case, the statute takes away the right of entry, without which the action of ejectment cannot be maintained. That in ejectment, it is not necessary to plead the statute, because the plaintiff must show a right of entry, as a part of his title to recover; but in mere personal actions, it is necessary to plead it, because it is only a bar to the remedy. That in Maryland it has been decided, that in replevin, the statute must be specially pleaded. Smith v. Williamson, 1 Har. & J. 147. That the cases in Virginia, in which it has been decided, that five years' possession of a slave gives a substantive title to a plaintiff in detinue, were cases under the peculiar statute of frauds of that state, where slaves were, for a long time, considered as real estate.

In reply to which, it was said, for the plaintiff, that the supreme court of the United States, in the case of McIver v. Ragan, 2 Wheat. [15 U. S.] 29, said, that "the statute of limitations is intended, not for the punishment of those who neglect to assert their rights by suit, but for the protection of those, who have remained in possession, under color of a title believed to be good." That such is emphatically the case, in the present instance. That the principles of the statute have been found to be so beneficial, that courts, both of law and equity, have extended them to analogous cases, not embraced by the letter of the statute; and although courts of law have decided, that it must be pleaded where it can be pleaded, yet, where, it cannot be pleaded, they have permitted it to be given in evidence, as in the case of a set-off barred by the statute, &c. That the principle of the rule, that twenty years' possession of lands gives a substantive title upon which a plaintiff in ejectment may recover, applies equally to the case of personal chattels; and has been so applied by the court of appeals, in Virginia, in the case of Newby v. Blakey, 3 Hen. & M. 57, and by the supreme court of the United States in the cases of Brent v. Chapman, 5 Cranch [9 U. S.] 358, and Shelby v. Guy, 11 Wheat. [24 U. S.] 371. That although there were cases of slaves, yet the principle, the reason, and the law, upon which those cases were decided, are equally applicable to chattels of any other description. These cases were not decided upon the statute of frauds, but upon the statute of limitations, as clearly appears from a remark of the supreme court, in its opinion in the case of Shelby v. Guy, 11 Wheat. [24 U. S.] 374, where the judge observes, that "the dates and facts do not bring the case within the operation of the statute of frauds of 1785." These cases and principles seem to me to be decisive of the present question.

It is not necessary, in this case, to decide that the possession of the plaintiff gives him a good title against all the world. It is sufficient in this action, and against this defendant, who has no title or right of possession, that it is primâ facie evidence of title, and is sufficient against everybody who does not show a better. It having been agreed, that the court should, upon this motion for a return of the property, decide the whole merits of the cause, I am of opinion that the defendant ought to confess judgment for one cent damages and costs.

Judgment for the plaintiff.

MORSELL, Circuit Judge, concurred. THRUSTON, Circuit Judge, absent.