RICHARD ROE, casual ejector, and THOMAS H. WILLINGHAM *et al.*, tenants in possession, plaintiffs in error, *vs.* JOHN DOE, *ex dem.*, CRAWFORD W. LONG *et al.*, executors, defendants in error.

(MONTGOMERY, Judge, was providentially prevented from presiding in this case.)

1. By the common law, and by the laws of this State, previous to 1822, a judgment, upon which no action of any kind was taken for twenty years, was presumed to be satisfied.

2. When, in an action of ejectment, a third person goes into possession after the commencement of the suit, and such third person is made a party defendant, the date of the commencement of the original suit is to be taken as the date of the commencement of the suit against such new party.

3. A defendant in ejectment who has, in good faith, claimed title to the premises, may set-off against the rents, not only his own improvements, but he may claim, also, the value of the improvements of those under whom he claims, with warranty, in so far as said improvements exceed in value the rents for which said warrantors were liable.

4. The *bona fide* tenant in possession, in ejectment, can set off his improvements at their true value to the land, and he is not limited to their actual cost.

Ejectment. Judgment. Party. Improvements. Set-off. Before Judge HARRELL. Baker Superior Court. November Term, 1872.

Crawford W. Long, Giles Mitchell and Henry R. Long, as executors upon the estate of James Long, deceased, brought ejectment against R. A. Dykes for the recovery of lot of land

number three hundred and twenty-seven, in the eighth district of the county of Baker. The declaration contained a demise from Aquilla Byford. It was filed in the clerk's office on April 25th, 1862, and served on the defendant on May 5th, of the same year. The record discloses that W. J. Willingham was served with a copy of the declaration on April 22d, 1867, and Thomas H. Willingham on April 3d, 1869. No formal order appears, making them parties.

The plaintiffs introduced the following evidence:

1st. Copy plat and grant from the State of Georgia to Aquilla Byford, covering the premises in dispute.

2d. Original execution in favor of James Long against Aquilla Byford, for $304 69, recovered in the Superior Court of Madison county on September 19th, 1821. Execution dated October 11th, 1821. Entry of levy on the premises in dispute on April 26th, 1848, and of the sale of said property for $14 00, on June 6th, 1848.

3d. Sheriff's deed to James Long, made in accordance with the provisions of the above mentioned sale, covering the property in controversy, on the ... day of ......, 1848.

4th. Certified copy of letters testamentary to plaintiffs, as the executors of James Long, deceased, and the admission of defendants that plaintiffs were such executors and had the right to sue.

Thomas H. Adams, sworn: Thomas Willingham took possession of the lot in dispute in the year 1860; about one-half the lot was then in cultivation; he bought the place from W. J. Lawton; the half lot cleared was fresh land; next year, 1861, the balance of the lot was deadened, and was planted partly in corn and peas; R. A. Dykes was in possession of the lot as overseer of Thomas Willingham, and so remained until after the year 1866, when W. J. Willingham went into possession; R. A. Dykes was overseeing in 1862; Thomas Willingham took possession after W. J. Willingham left, in the fall of 1867; the whole of the lot was in cultivation from 1861 up to the time of the trial; it was worth $1 00 per acre rent, from the year 1860 to the present time, taking the years

of the war into consideration; it was worth $1 50 to $2 00 per acre rent, from 1867 to the present time; it was worth $5 00 per acre to clear and put the land in cultivation; the lot is worth less cleared than in the forest; there is very little heart timber on the lot; the land in the forest would be worth $7 00 per acre; in its present state it is not worth over $3 00 or $4 00 per acre; the widow Clifton had possession of part of the lot before W. J. Lawton got it; she had three or four acres fenced in as a cattle pen; this, in the year 1860, appeared to have been cleared three or four years; the lot has not been cultivated all the time; it was not cultivated this year.

The defendants introduced the following evidence:

1st. Certified copy of deed made by James J. Mayo and Mary Clifton, administrators of William Clifton, deceased, dated April 4th, 1859, conveying half the premises in dispute to W. J. Lawton.

2d. Copy of deed made by James Scarbrough, dated March 22d, 1859, to W. J. Lawton, conveying one-half the lot in controversy.

3d. Deed made by John Wilkes, of the county of Jasper, to Uriah Williams, dated May 31st, 1830, conveying the premises in dispute.

4th. Deed made by Uriah Williams, of the county of Newton, to Seymour R. Bonner, dated May 9th, 1856, for the premises in dispute.

5th. Deed made by Alexander J. Robinson, administrator upon the estate of Seymour R. Bonner, deceased, of the county of Muscogee, to Benjamin O. Keaton, dated February 9th, 1859, for the premises in dispute.

6th. Deed made by Benjamin O. Keaton, dated June 22d, 1859, to J. J. Mayo, for the lot in controversy.

7th. Deed made by J. J. Mayo, dated June 24th, 1859, to W. J. Lawton, for the premises in dispute.

8th. Deed made by W. J. Lawton, of Dougherty county, dated June 18th, 1859, to Thomas Willingham, for the lot in controversy.

9th. Deed made by W. J. Willingham, dated December

Willingham *et al. vs.* Long *et al.*

11th, 1867, to Thomas H. Willingham, conveying the premises in dispute.

Charles J. Malone, sworn: It was worth the sum of $5 00 per acre to clear and put fresh land into a state of cultivation; owing to the state of labor now available in this country, the land in question, in its present state, is worth more than in a forest state, but to own only one lot, it would be worth more to have only one half of it cleared and the other half woodland; does not know this particular lot, but has seen the plantation.

......... Fleming testified, substantially, as the preceding witness, with the qualification, "that to own only an isolated lot of land, the lot would be more valuable in a forest state than cleared."

The jury returned a verdict for the plaintiffs for the premises in dispute, and $1,000 00 for *mesne* profits against W. J. Willingham, and $1,500 00 against Thomas H. Willingham.

The defendants moved for a new trial, upon the following grounds, to-wit:

1st. Because the verdict was excessive, and contrary to the law and the evidence.

2d. Because the Court erred in charging the jury as follows, to-wit: "It is insisted by defendants that as the execution against Aquilla Byford, the drawer of this lot, was over twenty years old at the time of the sale, it was presumed to be paid, and no title passed under said sale to Long, the plaintiffs' testator. This, in my opinion, is not the law of this case; it being conceded that the judgment and *fi. fa.* were obtained previous to the Act of 1823, the case turns upon the law as it stood previous to the date of said Act, and, under the Act of 1812, this judgment did not become dormant, and, although the sale took place on said *fi. fa.* after twenty years, and there was no entry on it except the levy upon this lot, yet this sale was valid and passed all the title which the said Byford then had to Long, the purchaser. The law of this case would be as contended for by defendants' counsel, if the judgment had been obtained after the Act of 1823. It is insisted by coun-

sel for Thomas Willingham that the statute of limitations, or his prescriptive right under the law, ran up to the time he was made a party, (3d of April, 1869,) and if he was in pos-session by his tenants, and those under whom he claimed from June 24th, 1859, the time of the date of the deed from James J. Mayo to W. J. Lawton, then he, the said Willingham, had a title by prescription.   This I decline to charge you, but in-struct you that the statute ceased to run in his favor from the time of the institution of suit, if Dykes was holding the pos-session of the same as overseer of Thomas Willingham, and, in order to set up a good prescriptive title, he must show that he was in possession by himself, and those under whom he claimed, for seven years previous to the institution of this suit."

3d.  Because the Court erred in the following charge:  "You will find, from the testimony, how long Dykes, W. J. Wil-lingham, and Thomas H. Willingham, each, had possession of the lot of land, and make a separate finding of the amount for which each is liable under the proof; the amount of im-provements made by each one ought to be credited to each, and kept separate, and deducted from the amount of rent due by each; they are not entitled to credit for the improvements made by the others, but only for such as each one made him-self.   If Thomas H. Willingham made no improvements on the place, but the proof shows that they were made by the others that preceded him in the possession, then you should not deduct any amount from the rents due by him, according to the proof."

The motion for the new trial was overruled, and defendants excepted upon each of the grounds aforesaid.

R. F. LYON; VASON & DAVIS; HINES & HOBBS, for plaintiffs in error.

WRIGHT & WARREN, for defendants.

McCay, Judge.

The common law doctrine that a judgment is presumed satisfied at the end of twenty years is well settled by authority, both in England and in America: Flaver *vs.* Bollingbrook, 1 Strange, 639; The State of Tennessee *vs.* Virgin, 36 Ga., 391; Burt *vs.* Casey, 10 Ga., 178; see, also, the cases cited by Judge Nesbit, in 10 *Ga.*, 178. The case of a defendant who has gone into possession after the commencement of the suit, and who is made a party defendant, by amendment, is very different from the case of adding a new lessor. The latter case is, as to the new lessor, a new suit, and as this Court has held, the statute runs against him—the new party—until he brings his suit, or is brought in as a plaintiff, that recovery may be had on his title: See 30 *Ga.*, 873; 38 *Ga.*, 439. But the case at bar is the adding of a new defendant, one who has gone into possession since the suit was brought. When he took possession he went into the shoes of his predecessor. Suit was pending against that predecessor, and by operation of law the suit passed over in its effects to him. He, the present defendant, would be bound by the judgment, as to the title, even if he were not made a party. It would make mere play of the proceedings of a Court to permit a party to escape the effect of a suit and a judgment, by letting a third party have the possesession, and drive the plaintiff to a new suit against him.

The only necessity for making the new tenant a party at all is to hold him for the *mesne* profits, and if he has gone in after the commencement of the suit, and holds under the person who was first sued, or is in as his successor, under the same right, we think it only fair to charge him for all the *mesne* profits he has received. And this is specially true under our law, which does not permit a new action for *mesne* profits, and authorizes all parties at interest to be made parties plaintiff or defendant. See Revised Code, sections 3281, 3284, 3288. The plea of improvements as an offset to the rents is an equitable defense, and should be regulated by the principles of justice and equity.

The Revised Code, section 2855, says: "Against a claim for *mesne* profits the value of improvements made by one *bona fide*, in possession under a claim of right, is a proper subject matter of set-off." The words of the Act do not confine this to the improvements made by the defendant. If the defendant is, *bona fide*, in possession under a claim of right, with a warranty from the previous possessor, who has made improvements, it is only just that he should have the benefit of those improvements, so far as they are in excess of the rents due from the first possessor. The present defendant has bought the property as it stands, if he be a *bona fide* holder. The plaintiff gets the improvements by his judgment, and as the defendant succeeds under his deed to all the rights of his warrantor, we think there is great equity in allowing him to set up whatever his warrantor might have done.

The language of our Code, section 4855, is: "value of improvements," not "cost of improvements." Section 3416 is still stronger; there the language is, "when the value of the premises has been increased by the repairs or improvements made," and again, the sum allowed is not to be so great as to diminish the profits below what the premises would have been worth without the improvements.

Judgment reversed.