# Hollis, *et al.* *v.* Watkins.

### *Bill for Partition.*

(Decided June 30, 1914.  66 South. 29.)

1. *Partition; Right to Partition.*—Where two brothers were tenants in common, and one died leaving a widow but no children, and then the other died leaving a widow and seven children, the children being the sole heirs of each estate, subject to the homestead and dower rights of each widow, the widow and children were entitled to have the land divided into two equal parts, one of which should be set aside to them as the heirs of the latter brother, and the other to them and the widow of the first brother, the same as if partition had been had during the life of the brother, and just as if there were no common heirs to each estate.

2. *Same; Situation of Home; Effect.*—Where land is held by two tenants in common, each of whom had a residence thereon which, together with the land and improvements on his side of the tract he occupied and  used for a period of twenty years with the other's acquiescence, each tenant was entitled to have set apart to him on partition, as against the other tenant in common, or his heirs, the land upon which his home was situated.

3. *Same; Homestead; Right to Have Set Apart.*—Under the facts in this case, an actual partition of the land is unnecessary, as equity can be done by setting aside the homestead of the widow of the brother leaving children, and by setting aside to her for her life by metes and bounds one-sixth of the entire tract as dower, and then selling the remainder of the land for division between the widow of the first brother dying without issue, and the children of the second brother, paying to the widow of the first brother out of such proceeds the value of her dower and homestead rights, and dividing the remainder, after payment of indebtedness, among the children.

4. *Homestead; Right of Widow.*—It is the policy of the law to settle upon the widow for her natural life the home occupied by her husband as his residence, and not to give her money in lieu thereof, unless the home cannot be given her.

5. *Dower; Rights of Widow.*—A widow should be given as her dower a life estate in a one-third part in acreage and value of the lands of which her husband died seized and possessed, and not be given money in lieu thereof unless the lands cannot be allotted to her.

8. *Appeal and Error; Remand; Subsequent Proceedings.*—While the widow of one tenant in common had not by cross bill sought the relief to which she was entitled under the evidence, yet if her answer supported by evidence shows the situation under which a complainant is not entitled to a decree for entire partition, as granted, the case will be remanded that the decree may be set aside, and the pleadings amended to meet the equity shown by the evidence, and for the admission of such evidence in addition as the parties may desire.

APPEAL from Lamar Chancery Court.

Heard before Hon. W. H. SIMPSON.

Partition by Della Watkins against J. L. Hollis and others. From the relief granted respondents appeal. Reversed and remanded.

See former report of this case 181 Ala. 248, 61 South. 893.

WALTER NESMITH and WALTER L. THOMPSON, for appellant.

WILSON KELLY, for appellee.

DE GRAFFENRIED, J.—J. K. P. Hollis and T. C. Hollis were tenants of a tract of land containing something less than 1,000 acres. They were brothers, and each was married. J. K. P. Hollis was without children, but T. C. Hollis was the father of seven. The relations between the families were evidently pleasant, because, for a long period of years, the two families lived in harmony upon the said property. In fact, all of the children of T. C. Hollis appear to have been born on this land, and some of them were of lawful age when T. C. Hollis died.

There were two residences and separate settlements on the land. One of these residences was occupied by J. K. P. Hollis and his wife, Mattie Hollis. The other residence was occupied by said T. C. Hollis and his wife, Susie Hollis, and their children. The two families cul-

tivated separate fields upon the property, but the two brothers remained tenants in common of the property until T. C. Hollis died. After the death of T. C. Hollis, which occurred several years before the filing of the bill, his widow and children remained upon the property and continued to reside upon and cultivate parts of it, just as T. C. Hollis had done prior to his death. J. K. P. Hollis then died, leaving the said Mattie Hollis as his widow and the said seven children of his deceased brother, T. C. Hollis, as his only heirs. Upon the death of their father, T. C. Hollis, his said seven children— the said T. C. Hollis left no will—became, as his heirs, tenants in common of *his* undivided half interest in the said lands, subject, of course, to the dower and homestead rights of their mother, Susie Hollis. Upon the death of their uncle, J. K. P. Hollis—who also died without a will—these seven children became the owners, as tenants in common, as his only heirs, of his undivided one-half interest in said lands, subject to the homestead and dower rights of the said widow of J. K. P. Hollis. No homestead has been set apart to the widow of T. C. Hollis, and no dower has been assigned to her. A homestead has been set apart out of the lands to the said Mattie Hollis, the widow of J. K. P. Hollis.

1. The widow and heirs of T. C. Hollis and the widow and heirs of J. K. P. Hollis, *in this proceeding, upon the facts of this case,* and under its peculiar equity, must be treated as if the heirs of T. C. Hollis and the heirs of J. K. P. Hollis were *not* the same *individuals.* As to this land, when T. C. Hollis died, his *widow* and his heirs stood in *his* shoes. They were, in so far as *this* land is concerned, invested with the *same legal* and *equitable rights* that the said T. C. Hollis had in them while he lived, *no more and no less.* They were entitled, just as T. C. Hollis was entitled, to have these lands

partitioned, and, under the evidence in this case, the lands could then—and can now—be divided into two equal parts.  If such partition had then been had, a homestead could, out of the part set aside to the widow and heirs of T. C. Hollis, have been set apart to the widow of said T. C. Hollis, and dower could have been assigned to her out of such part.  Upon the death of J. K. P. Hollis a homestead could have been set apart and dower could have been assigned to his widow out of the part allotted to said J. K. P. Hollis.  Indeed, but for the fact that T. C. Hollis and J. K. P. Hollis were brothers and that each, for many years prior to the death of said T. C. Hollis, had resided upon and separately cultivated different parts of said lands, but for the fact that J. K. P. Hollis had no children, and that the children of his deceased brother, upon his death, would become his only heirs—we think it probable that, upon the death of T. C. Hollis, a partition would have been had.  Now, out of respect to the conflicting rights and equities of the parties, since J. K. P. Hollis is dead, his widow and his heirs should, at the hands of the courts, receive the same treatment as if J. K. P. Hollis *himself* had left children, or, as already stated, as if his heirs were *not* the children of his brother, T. C. Hollis.  The law intends that a widow shall, when that can be done, in addition to her dower, have a *homestead* upon her deceased husband's lands so long as she shall live.  Where, in the nature of things, a homestead— a place in which to actually reside—cannot be set apart to a widow, then the law undertakes to make provision for her in lieu of a homestead.  This homestead—this *shelter* which the humanity of the law makes  for the widow—when properly set apart to her, cannot, since the adoption of the code of 1907 (see section 4196 of said Code) be sold, even for reinvestment, without the

consent of the widow.—*Clements v. Faulk,* 181 Ala. 219, 61 South. 265.

The facts of this case bring it squarely, almost literally, within the doctrine which was recently declared by this court in *Upshaw, et al v. Upshaw, et al.,* 180 Ala. 204, 60 South. 804. In that case this court said: "The fact that said John R. Upshaw and A. W. Upshaw both died before any partition of the land was made, or before the lands were sold for the purposes of distribution, cannot, we think, affect that right which followed the lands into the hands of the heirs and widows of the respective parties. The widow and heirs of John R. Upshaw stand in his shoes, and the widow and heirs of A. W. Upshaw stand in his shoes. If the 450 acres of land can be equitably divided so as to give the heirs of John R. Upshaw in severalty two-thirds of said land in acreage and value, and the heirs of A. W. Upshaw in severalty one-third of said land in acreage and value, then, by appropriate proceedings, this can be done, and the homestead of each widow can be set apart and the dower of each can be properly assigned by metes and bounds out of the lands so set aside to each set of heirs."

In this case, when T. C. Hollis died, a right of dower and homestead immediately, in his widow's favor, attached to an undivided moiety in said lands. At that time, undoubtedly, upon appropriate proceedings, a court of equity could have divided the land into two equal parts, and out of the part alloted to the widow and heirs of T. C. Hollis could have set apart to the widow her homestead and dower.—*Upshaw v. Upshaw, supra.* Indeed, when this bill was filed, one of the children of T. C. Hollis was a minor, and he was not only peculiarly within the protection of a court of equity, but also of our statutes securing the rights of homestead.

2. We are also satisfied that if, upon the death of T. C. Hollis, a partition of the lands had been had between said J. K. P. Hollis and the widow and heirs of T. C. Hollis, the court, in dividing the lands, would have set apart to J. K. P. Hollis, in severalty, that half of the land in acreage and value upon which his residence is situated, and to the widow and heirs of T. C. Hollis that half of the land in acreage and value upon which their residence—the residence of T. C. Hollis—is situated. As already stated, T. C. Hollis and J. K. P. Hollis each had a residence upon these lands, which residences are three-quarters of a mile apart. While there had never been an actual partition of the property by these brothers, nevertheless the residences and their appurtenances had been by both of the occupants occupied and used separately for such periods of time as to indicate that each, as against *himself* and *his heirs,* had so dedicated to the other for residential purposes the residence which he occupied as, upon a partition of the lands, would justify the courts, in recognition of a situation created by the mutual long-continued assent, and course of dealing of the parties with reference to the land, to so divide the land into two equal parts in acreage and value as to give to each in severalty that part of the land upon which is situated his residence. While the *evidence* does not shed any light upon the question as to who built the residences, and for that reason this case is not, by positive evidence, brought directly within the operation of *Ferris v. Montgomery Land & Improvement Co.,* 94 Ala. 565, 10 South. 607, 33 Am. St. Rep. 146, it is nevertheless difficult to conceive that a farmer, who is a tenant in common with another, can exclusively occupy, for a period of 20 years, a residence and appurtenances upon a farm, without, during that period, out of necessity, placing such fences,

outbuildings, and other improvements at or near such residence as to bring the place of actual occupancy as a residence directly within the influence of the above-cited case. The evidence shows, however, that each of these brothers, with the full knowledge of the other, had for so great a period of time exclusively occupied his residence and exclusively used for his own individual purposes the farming lands situated conveniently near his residence as to give rise to the claim, supported by some, but not the weight, of the evidence, that there had, in fact—before the death of J. K. P. Hollis—been an actual parol partition of these lands. While respondents failed to establish by their evidence an actual partition of the property, their evidence does disclose such a course of dealing by these brothers with each other, with reference to the lands, as indicates that, upon partition of the lands, each had acquired, as against his brother, such a status with reference to the land upon which he resided as would have impelled the courts to set apart to him, in acreage and value, that land upon which his residence is situated. In making this statement we do not, however, mean to say that, on such a partition, the *value* of the residences, under the evidence as its exists in this record, would not have been considered; and herein we differentiate this case from the case of *Ferries v. Montgomery Land & Improvement Co., supra.* We do say, however, that such a situation with reference to these lands is shown that, upon a partition, each tenant in common was entitled to have set apart to him, as against the other tenant in common or his heirs, the lands upon which is situated his home.

The rights of Susie Hollis to homestead and dower in the lands attached eo instanti upon the death of the husband, and while, since that time, J. K. P. Hollis has

died, his *widow* and his *heirs* stand in his shoes. They collectively represent J. K. P. Hollis, and their rights, collectively, are no greater than his.—*Upshaw v. Upshaw, supra.*

The bill in this case was filed by Della Watkins, who is one of the children of T. C. Hollis, and who is also an heir of her uncle, J. K. P. Hollis, and in the bill she prays that all of the lands be sold for distribution. In our opinion, as the lands can be equitably divided into two parts, Susie Hollis, the widow of T. C. Hollis, is entitled to have set apart to her, out of said lands, a homestead. This homestead should, of course, include the house which was occupied as a residence by T. C. Hollis when he died.

She is also entitled to have her dower assigned to her by metes and bonds. Mrs. Hattie Hollis, widow of J. K. P. Hollis, has in writing consented for the lands to be sold, and has consented to receive, in lieu of her homestead and dower rights, a sum of money equal in amount to the value of such homestead and dower rights. As the lands can be divided—as shown by all the evidence—into two equal tracts, and as the children of T. C. Hollis now own, subject to the dower and homestead rights of the two widows, all of the land, an actual partition of the lands is now unnecessary. The entire equity of the situation can be met by setting aside the homestead of Mrs. Susie Hollis, as above indicated, and by setting aside to her, by metes and bounds, as dower, a sufficient amount of land, in acreage and value, as will represent her estate for life as doweress in the remainder of the land, which is an undivided one-sixth interest for life in said land. After this has been done, the remainder of the land can then be sold for division between the widow of J. K. P. Hollis, who has given her written consent to the sale, and the children of said

T. C. Hollis. Mrs. Mattie Hollis, out of the proceeds of the sale, will be entitled to receive a sum of money equal to the value of *her* homestead and dower rights in the land, and the remainder of the money, after the payment of the mortgage described in the bill, can be divided among the other tenants in common.—*Upshaw v. Upshaw, supra.*

4. For the above to be effectuated, the pleadings in this case must be amended. The bill can, if the complainant sees proper to amend it, be amended so as to meet the situation presented by the evidence. If she does not do so, then Mrs. Susie Hollis or some of the other respondents can, by filing a cross-bill, obtain the needed relief. While Mrs. Susie Hollis has shown no diligence in the matter of the assignment of her dower or in the matter of the setting apart of her homestead, her answer shows—and the evidence sustains the answer on that point—that she is entitled in equity to a homestead in the land and to an assignment of her dower by metes and bounds.

It is the policy of the law to settle upon the widow the *house* which her husband occupied as his residence for her natural life, and it gives her money in lieu of the *house* only when the house cannot be given to her.

It is also the policy of the law to give her, *as her dower,* a life estate in one-third part in acreage and value of the lands of which her husband died seised and possessed, and *not* to give her money in lieu of this land when the land itself can be allotted to her.

While Mrs. Susie Hollis did not, by a cross-bill, seek the relief to which, under the facts shown in this case, she is entitled, she did by her answer show a situation—and the answer on this point, as we have said, is supported by the evidence—which shows that the complainant is not now entitled to a sale of all the lands describ-

[Hall v. Gordon.]

ed in the bill, for division among the owners of the land. We have therefore concluded that, in order that perfect equity may be done, this cause should be remand-ed to the court below in order that the decree of sub-mission may be set aside and that the pleadings may be amended to meet the equities shown by the evidence. The chancellor, if he sees proper to do so, may allow the parties to take further evidence if they see proper to do so, and, upon a new submission, the equities of the parties can be settled in accordance with the views expressed in this opinion.

The decree of the court below is therefore reversed, and the cause is remanded for further proceedings there-in.

Reversed and remanded. All the Justices concur.