(82 South. 668)

PORTER v. HENDERSON.    (7 Div. 992.)

(Supreme Court of Alabama.    June 12, 1919.)

1. DEEDS ⬤⇒93—CONSTRUCTION.

In the construction of written instruments a controlling inquiry is the intention of the parties.

2. DEEDS ⬤⇒95—BY UNSKILLED DRAFTSMAN —CONSTRUCTION.

If a deed is found to bear on its face evidence that the draftsman was not skilled in drawing such instrument, greater latitude of construction must be indulged than in cases where the instrument appears to have been skillfully drawn by one acquainted with the force and meaning of the technical expressions employed.

3. DEEDS ⬤⇒95—CONSTRUCTION.

The intention of the parties must, if possible, be gathered from the language used in the instrument being construed, and when that can be ascertained in this way arbitrary rules are not to be resorted to.

4. CONTRACTS ⬤⇒163—WRITTEN PORTIONS — CONSTRUCTION.

Where parts of instrument are written and others printed, the written portion has been given greater weight than the printed, but the instrument must be examined in its entirety, apparent discrepancies reconciled, and some operation given each clause, if possible.

5. DEEDS ⬤⇒90—CONSTRUCTION.

Greater strictness is required in the construction of deeds than of wills.

6. DEEDS ⬤⇒95—CONSTRUING AGAINST GRANTOR.

Deeds of bargain and sale for valuable consideration are to be construed most strongly against the grantor.

7. DEEDS ⬤⇒97—CONFLICTING AND CONTROLLING CLAUSES.

The granting clause will usually control any interlocutory recitals as to interest intended to be conveyed, and the habendum clause, if the latter is in conflict with the former.

8. DEEDS ⬤⇒97 — CONFLICTING CLAUSES — CONTROLLING INTENT.

When the granting clause and habendum are of like effect, the controlling intent of the parties thus evidenced as to quantum of estate conveyed is given effect.

9. DEEDS ⬤⇒105 — TO MOTHER AND "CHILDREN."

Under deed conveying to W. and her children and their assigns, held, that W. and her two children then living each received an undivided one-third interest, and that children thereafter born took no interest in trust by the conveyance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Children.]

10. ESTOPPEL ⬤⇒38—AFTER-ACQUIRED TITLE —INURING TO PURCHASER.

If one having no title conveys lands by express warranty or by warranty which the law implies from the use of the words "grant, bargain, sell, and convey," and thereafter acquires title, such title will inure and pass eo instanti to his vendee.

11. ESTOPPEL ⬤⇒42—AFTER-ACQUIRED TITLE —INURING TO PURCHASER.

Specific warranty of title in deed by complainant conveying "only such interest as was awarded by" his grantor having an undivided one-third interest held not to prevent complainant from thereafter acquiring the two-thirds interest of the other owners.

12. PARTITION ⬤⇒85—IMPROVEMENTS—REIMBURSEMENT.

Where complainant seeks to enforce his after-acquired title to a two-thirds interest in the land in question and have partition against defendant, an innocent person, claiming through complainant's grantee, and who has expended money and labor in making valuable improvements, the present value of the improvements will be allowed to defendant; equitable division of the property without sale being impossible.

Appeal from Circuit Court, Talladega County; Hugh D. Merrill, Judge.

Bill by W. D. Henderson against Essie C. Porter for the sale of lands for division. From the decree rendered, respondent appeals. Affirmed in part, and in part reversed and remanded.

The following is one of the papers directed to be set out:

"This indenture made and entered into this 15th day February, A. D. 1911, by and between W. D. Henderson and his wife, Nevada Henderson, of the first part, and E. R. Poe, of the county of Talladega and state of Alabama, of the second part, witnesseth: That the said W. D. Henderson and wife, Nevada Henderson, for and in consideration of the sum of one hundred and twenty-four dollars to them in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, have this day granted, bargained, sold, aliened, enfeoffed, and conveyed, and by these presents do grant, bargain, sell, enfeoff, and convey, to the said E. R. Poe and his assigns, all that certain tract or parcel of land lying and being in the county of Talladega and state of Alabama, and more particularly described as follows: Lots (2 and 3) two and three in block H in the town of Lincoln, county of Talladega, and state of Alabama, according to the original published of said town of Lincoln, Ala. This deed conveys only such interest as was owned by Jessie Wills and her husband, Randall Wills.

"To have and to hold the above-described tract or parcel of land together with the tenements and appurtenances thereto belonging or otherwise appertaining unto the said party of the second part, his heirs and assigns, forever. And the said W. D. Henderson and wife, Nevada Henderson, of the first part, for themselves, their heirs, executors, and administrators, do warrant and will forever defend the title to the above-described and hereby granted

premises unto the said party of the second part, his heirs and assigns, from and against themselves and all and every person claiming or holding under them, the said party of the first part, and against the lawful title, claim, or demand of all and every person whomsoever claiming or holding by, from, or under the government of the United States.

"In testimony whereof we have hereunto set our hands and seals the day and year above written.

"[Signed]   W. D. Henderson.   [L. S.]
"Nevada Henderson.   [L. S.]"

(This deed was jointly and separately acknowledged.)

The deed from Jessie Wills and husband to W. D. Henderson is as follows:

"This indenture, made and entered into this the 21st day of November, A. D. 1910, by and between Jessie Wills and her husband, Randle Wills, of the first part, and W. D. Henderson, of the county of Talladega and state of Alabama, of the second part, witnesseth: That the said Jessie Wills and her husband, Randle Wills, for and in consideration of the sum of one hundred and eighteen dollars to them in hand paid by party of the second part, the receipt whereof is hereby acknowledged, have this day granted, bargained, sold, aliened, enfeoffed, and conveyed, and by these presents do grant, bargain, sell, enfeoff, and convey, to the said W. D. Henderson and his assigns all that certain tract or parcel of land lying and being in the county of Talladega and state of Alabama, and more particularly described as follows, to wit: Lots (2 and 3) two and three in block H in the town of Lincoln, county of Talladega, and state of Alabama, according to the original published map of said town of Lincoln, Alabama.

"To have and to hold the above-described tract or parcel of land, together with the tenements and appurtenances thereto belonging, or otherwise appertaining, unto the said party of the second part, his heirs and assigns forever. And the said Jessie Wills and husband, Randle Wills, of the first part, for themselves, their heirs, executors, and administrators, do warrant and will forever defend the title to the above described and hereby granted premises unto the said party of the second part, his heirs and assigns, from and against themselves, and all and every person claiming or holding under them, the said party of the first part, and against the lawful title, claim, or demand of all and every person whomsoever, claiming or holding by, from, or under the government of the United States.

"In testimony whereof, we have hereunto set our hands and seals the day and year first above written.   Jessie Wills. [L. S.]
"Randle Wills. [L. S.]

"Signed, sealed, and delivered in the presence of E. D. Acker.

"The State of Alabama, Talladega County.

"I, E. D. Acker, a notary public in and for said county, hereby certify that Jessie Wills and Randle Wills, whose names are signed to the foregoing conveyance, and who are known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, they executed the same voluntarily on the day the same bears date.   Given under my hand this 21st day of November, 1910.

"E. D. Acker, a Notary Public.

"The State of Alabama, Talladega County.

"I, E. D. Acker, a notary public in and for said county, hereby certify that on the 21st day of November, 1910, came before me the within named Jessie Wills, known to me to be the wife of the within named Randle Wills, who, being examined separate and apart from the husband touching her signature to the within conveyance, acknowledged that she signed the same of her own free will and accord, and without fear, constraints, or threats on the part of her husband. In witness whereof, I have hereunto set my hand this 21st day of November, 1910.

"E. D. Acker, a Notary Public.

"The State of Alabama, Talladega County.

"I, J. E. Camp, judge of probate for said county, hereby certify that the within deed was filed in my office for record at 1 o'clock p. m. on the 17th day of February, 1911, and duly recorded on the 17th day of February, 1911, in Deed Record, Vol. No. 66, on page 178.

"J. E. Camp, Judge of Probate."

The following is the deed from Burns and wife to Jessie Wills and her children:

"This indenture made and entered into this 4th day of November, A. D. 1904, by and between R. B. Burns and his wife, Angie L. Burns, of the first part, and Jessie Wills and her children, of the county of Talladega and state of Alabama, of the second part, witnesseth: That the said R. B. Burns and Angie L. Burns, for and in consideration of $40.00 to them in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, have this day granted, bargained, sold, aliened, enfeoffed, and conveyed, and by these presents do grant, bargain, sell, alien, enfeoff, and convey, to the said Jessie Wills and her children and their assigns, all that certain tract or parcel of land lying and being in the county of Talladega and state of Alabama, and more particularly described as follows: Lots 2 and 3 in block H in the town of Lincoln, county of Talladega, and state of Alabama.

"To have and to hold the above-described tract or parcel of land together with the tenements and appurtenances thereunto belonging or in any wise appertaining unto said party of the second part their heirs and assigns forever. And the said R. B. Burns and wife, Angie L. Burns, of the first part, for themselves, their heirs, executors, and administrators, do warrant and will forever defend the title to the above-described and hereby granted premises unto the said party of the second part, their heirs and assigns, from and against themselves and all and every person claiming or holding under them, the said party of the first part, and against the lawful title, claim, or demand of all and every person whomsoever claiming or holding by, from, or under the government of the United States.

"In testimony whereof we have hereunto set our hands and seals the day and year first above written."

(Properly signed and jointly and separately acknowledged.)

Riddle & Riddle, of Talladega, for appellant.

Knox, Acker, Dixon & Sims, of Talladega, for appellee.

THOMAS, J. The original bill had for its purpose the sale of lands for division among joint owners.

Respondent filed answer and cross-bill, to which complainant demurred and answered. The decree granted relief to the original complainant, and respondent appeals.

The bill averred that W. D. Henderson owned a two-thirds interest in certain lots, and it was admitted that, if he owned an interest therein, said property could not be equitably divided without a sale. The answer and cross-bill denied that Henderson had any title to the property in question, and averred that the deed through which respondent claims conveyed a fee-simple title to her; that, if this was not its legal effect, in the chain of title under which she held said Henderson had made a warranty deed (to her immediate grantor) to said land, and was estopped to claim an after-acquired interest which passed under his said warranty deed. It is further averred (in the cross-bill) that valuable improvements had been made by subsequent purchasers, and if it be held that Henderson had thereafter acquired a superior two-thirds interest in the lands in equity, respondent should be allowed full value for said improvements made on the lands.

As stated by counsel, there is no dispute in regard to the issues of fact presented which inquire, in short: (1) Whether Jessie Wills, at the time she executed a deed (November 21, 1910) conveying to W. D. Henderson lots 2 and 3 in block H, in the town of Lincoln, county of Talladega, state of Alabama, had an undivided interest in, or fee simple title to, said lots. This inquiry necessitates a construction of the deed of R. B. Burns and wife (November 4, 1904) conveying said lands to "Jessie Wills and her children." To an understanding of the discussion necessary in the construction of this deed, the reporter will set out these two conveyances. (2) What is the construction of the deed (of February 15, 1911) by W. D. Henderson and wife to respondent's immediate grantor, E. R. Poe? This conveyance, attached to the bill as Exhibit A, has been transmitted to the court for inspection; and the reporter will set it out. (3) The secondary question for determination is the right of Mrs. Porter to recover for valuable improvements she and E. R. Poe made on the lots.

The agreed statement of facts shows that when the deed by R. B. Burns and wife was made and delivered to "Jessie Wills and her children" (November 4, 1904), she had only two children, Howard and Bryant Wills, and that since the making and delivery of the deed she has had four other children born before the dates of the deeds (September 5 and 13, 1913) by Bryant and Howard Wills to W. D. Henderson; that said Henderson claims title through said Howard and Bryant Wills by virtue of the two warranty deeds in evidence, reciting respective considerations of $10 and $50, and purporting to convey "lots two (2) and three (3) in block H in the town of Lincoln, Ala.," and being the property conveyed on November 4, 1904, by R. B. Burns and wife to "Jessie Wills and her children"; that lots 2 and 3 include the lots involved in this suit, and of which respondent has been in possession, claiming to own them since the execution to her of the deed of E. R. Poe and wife on August 16, 1911; that Mrs. Porter's "possession has been open, notorious, and exclusive under claim of ownership and right, and she has had the exclusive possession of same under claim of ownership and right continuously, holding same under said deed and having the actual possessio pedis of said property during said time." It was further agreed that Henderson "has claimed since the making of said Bryant Wills deed an undivided third interest in this property, and then since the making of the Howard Wills deed an undivided third interest in said property, and that he has assessed taxes on said undivided interest"; that when "R. B. Burns and wife conveyed the lands involved in this suit to Jessie Wills the property was * * * unimproved, and that while E. R. Poe was in possession of the same, after he had acquired a deed to the same and such title as the deed carried, he erected a dwelling house of six rooms and a barn and dug a well, and these improvements are still on the land and were on it at the time it was sold to the respondent."

[1] In the construction of written instruments several cardinal rules have been given application in this jurisdiction. A controlling inquiry is the intention of the parties, which must be ascertained from a consideration of the whole instrument, from the nature of the subject-matter, and from the surrounding circumstances; that is to say, by having regard for the situation of the parties and the objects they had in view in making the contract or conveyance. First Nat. Bank v. McIntosh, 79 South. 121, L. R. A. 1918F, 353;[1] Lauderdale Power Co. v. Perry, 80 South. 476, 480;[2] Cobbs v. Union Naval Stores Co., 202 Ala. 333, 80 South. 415; 1 Brick. Dig. p. 533.

[2] In looking to the whole structure of a deed, "if it is found to bear on its face evidence that the draftsman was not skilled in drawing such instrument, that he was unacquainted with the technical meaning and force of the terms used, greater latitude of construction must be indulged than in cases where the instrument appears to have been skillfully drawn by one acquainted with the

[1] 201 Ala. 649.      [2] 202 Ala. 394.

force and meaning of the technical expressions employed." Sullivan v. McLaughlin, 99 Ala. 60, 64, 65, 11 South. 447, 448; Campbell v. Gilbert, 57 Ala. 569; Dickson v. Van Hoose, 157 Ala. 459, 465, 47 South. 718, 19 L. R. A. (N. S.) 719; Sharp v. Hall, 86 Ala. 110, 5 South. 497, 11 Am. St. Rep. 28; Hamner, Adm'r, v. Smith, 22 Ala. 433; ·Graves v. Wheeler, 180 Ala. 412, 61 South. 341, 415; May v. Ritchie, 65 Ala. 602.

[3] As a corollary from the foregoing it is recognized that the intention of the parties must, if possible, be gathered from the language used in the instrument being construed; and, when it can be ascertained in this way, arbitrary rules are not to be resorted to. If conflicting intentions are expressed therein, the only alternative is to construe the instrument by the arbitrary rules, even though the construction may be so denominated thereby. Graves v. Wheeler, supra; Dickson v. Van Hoose, supra; Campbell v. Gilbert, supra.

[4] Where parts of an instrument are written and others printed, the written portion has been given greater weight than the printed; but the instrument must be examined in its entirety, apparent discrepancies reconciled, and some operation given each clause if possible, and, if not, to ascertain and give effect to the intention of the parties. Bolman v. Lohman, 79 Ala. 63, 67; John Deere Plow Co. v. City Hdw. Co., 175 Ala. 512, 516, 57 South. 821; 1 Brick. Dig. p. 533. In the Deere Plow Co. Case, supra, Mr. Justice Mayfield observed, in the construction of contracts partly written and partly printed:

"The court should examine the whole instrument with a view of ascertaining and carrying into effect the purpose and object the parties had in view, and thus give some effect to each clause, and reconcile apparent discrepancies if practicable," giving to the written parts precedence over those which are printed.

[5-7] In connection with the foregoing rules observed in the construction of written instruments generally are certain rules governing the construction of conveyances of real property, which are rules of property in this state, namely: That greater strictness is required in the construction of deeds than of wills (Campbell v. Noble, 110 Ala. 382, 394, 395, 19 South. 28; Vizard v. Robinson, 181 Ala. 349, 357, 61 South. 959), and that deeds of bargain and sale for a valuable consideration are to be construed most strongly against the grantor and in favor of the grantee; that the granting clause of conveyances of real estate will usually control any interlocutory recitals as to the interest intended to be conveyed, and the habendum clause if the latter is in conflict with the former (Cobbs v. Union Naval Stores Co., supra, 80 South. 417;[3] Head v. Hunnicutt, 172 Ala. 48, 55 South. 161; Webb v. Webb's

Heirs, 29 Ala. 588; Graves v. Wheeler, supra, 180 Ala. 416, 61 South. 341; ·Vizard v. Robinson, supra; Petty v. Boothe, 19 Ala. 633; Wallace v. Hodges, 160 Ala. 276, 281, 49 South. 312; Robertson v. Robertson, 191 Ala. 297, 301, 68 South. 52).

[8] When the granting clause and habendum are of like effect, the controlling intent of the parties thus evidenced as to the quantum of estate conveyed is given· effect (Cobbs v. Union Naval Stores Co., supra; Sou. Ry. Co. v. Hays, 150 Ala. 212, 216, 43 South. 487; Sullivan v. McLaughlin, supra); and the granting clause is held to determine the interest intended to be conveyed, and is the primary intention clause. in conveyances, rather than some interpolation thereof (Webb v. Webb's Heirs, supra; McMillan v. Craft, 135 Ala. 148, 33 South. 26; Dickson v. Wildman, 183 Fed. 398, 404, 105 C. C. A. 618).

[9] What, then, is the legal effect of the deed from Burns and wife to "Jessie Wills and her children"? What children were included as grantees therein; the two children then in life, or was an estate created in trust for such children thereafter borne by Mrs. Wills? This inquiry was answered as early as 1 Coke upon Littleton (Butler & Hargrave's edition with notes) by the statement that—

"B. having divers sonnes and daughters, A. giveth lands to B. et liberis suis, et a lour heires, the father and all his children do take a fee simple joyntly by force of these words (their heires); but if he had no childe at the time of the feoffment, the childe borne afterwards shall not take." L. 1 C. 1, § 1, "Of Fee Simple," 9· a.

It has been held generally by the courts that a conveyance to one and his children conveys to said children an estate jointly or in common with the parent. L. R. A. 1917B, pp. 73, 81. There are instances in this jurisdiction in whch parent and children have been held to take concurrently where the gift was to a married woman and her children (Dunn v. Bank, 2 Ala. 152); that the children living when the property falls in possession take jointly with their parent (Vanzant v. Morris, 25 Ala. 285); and that a deed by which the grantor conveys lands in trust for his wife and her children, to her and their proper use and exclusive benefit and behoof forever in fee simple, vests in the wife and her only child then living equal undivided interests in the property, to the exclusion of after-born children (Varner v. Young's Ex'r, 56 Ala. 260). See, to like effect, Moore v. Lee, 105 Ala. 435, 17 South. 15; Vanzant v. Morris, supra; Mason v. Pate's Ex'r, 34 Ala. 379; Williams v. McConico, 36 Ala. 22; Shuttle, etc., Co. v. Barker, 178 Ala. 366, 373, 60 South. 157; Chandler v. Jost, 81 Ala. 411, 2 South. 82).

It follows that the deed by Burns and wife to "Jessie Wills and her children" con-

[3] 202 Ala. 333.

veyed an undivided interest in said property to Mrs. Wills and her two children then living, each receiving an undivided one-third interest, and that her thereafter-born children took no interest in trust by the conveyance. When Mrs. Wills and husband made and delivered the warranty deed to the lands to W. D. Henderson, it conveyed only a one-third interest therein, and an undivided one-third interest remained, respectively, in Howard and Bryant Wills.

[10] It is the settled law of this state that, if one having no title convey lands by express warranty or by the warranty which the law implies from the use of the words "grant, bargain, sell, and convey," and thereafter acquires title, "such title will inure and pass eo instanti to his vendee. This by a species of estoppel." Such covenants for title contained in deeds pass after-acquired title not only to the grantee named therein, but to his successors. Sayre v. Sheffield L. I. & C. Co., 106 Ala. 440, 18 South. 101; 2 Devlin on Deeds, § 946. Of the rule it is said in Doolittle v. Robertson, 109 Ala. 412, 19 South. 851:

"In no state perhaps has the rule been more rigidly adhered to than in this 'that, when one sells land to which he has no right, with warranty of title, and he afterwards acquires a good title, it passes instantly to his vendee, and he is estopped from denying that he had no right at the time of the sale.'" Cobbs v. Union Naval Stores Co., supra.

And in Doe ex dem. Anniston City Land Co. v. Edmondson, 145 Ala. 557, 40 South. 505, it was held that a deed without words of transfer, but describing the land and containing a warranty of title, works an estoppel against the grantor to assert title against the grantee or to defeat an assertion of title by grantee against grantor, and also estops grantor to assert an after-acquired title to the land against the grantee.

The effect of the decision in Higman v. Humes, 127 Ala. 404, 30 South. 733, was that the words "grant, bargain, sell, and convey" in a mortgage on lands operate, by virtue of the statute, as a warranty of title, and under them a subsequently acquired title by the grantor as a rule inured to the benefit of the grantee, and cannot be made to "displace or impair an outstanding lien or claim in a third person."

Mr. Chief Justice Stone said in Olds v. Marshall, 93 Ala. 138, 141, 8 South. 284:

"The asserted state of facts and law on which she founds this claim, and prays for this relief, may be stated as follows: First, that the deed from her father to her contains covenants of warranty, both implied and express, and is founded on a recited money consideration; that this, as between the parties, is a deed on valuable consideration, as distinguished from one merely voluntary, and constitutes the complainant a purchaser, not a donee. This legal position is well taken. Bolling v. Munchus, 65 Ala. 558; Rutledge v. Townsend, 38 Ala. 706; Lawrence v. McCalmont, 2 How. 426, 445, 15 Curt. Dec. 178 [11 L. Ed. 326]. Second, that whatever title and right to the land the father, A. Marshall, acquired after he executed the deed to the complainant, vested instantly in her by virtue of the covenants in his deed to her. This position is also well taken. Chapman v. Abrahams, 61 Ala. 108, 114; Blakeslee v. Mobile Life Ins. Co., 57 Ala. 205."

To like effect is New Eng. Mortg. Security Co. v. Fry, 143 Ala. 637, 42 South. 57, 111 Am. St. Rep. 62.

In Chapman v. Abrahams, 61 Ala. 108, 114, again Judge Stone applied the rule as follows:

"In the case of Blakeslee v. Mobile Life Insurance Co., 57 Ala. 205, there was an equitable life estate in the wife, remainder in fee to her children. A mortgage on the lands was executed, in which husband, wife, and their two children joined, one of the children adult, and the other a minor. The mortgage was made to secure a debt of the husband, and contained the words 'grant, bargain, and sell.' The minor child, grantor, died. leaving his adult sister, comortgagor, his sole heir at law. The question was whether this interest, which descended from the minor to his adult sister, passed by the implied covenants in her mortgage. We held that it did. Our language was: 'Admitting the invalidity of the mortgage by the minor, his estate having descended to his sister as sole heir, the words used in the conveyance, under the statute, imply a covenant of warranty, and estop her from asserting the title thus acquired against the mortgagee.'"

The estoppel from assertion of title acquired by descent for like reason given application by Mr. Chief Justice Brickell in Blakeslee v. Mobile Life Ins. Co., 57 Ala. 205, was on the authority of Stewart v. Anderson, 10 Ala. 504; Van Rensselaer v. Kearney, 11 How. 297, 13 L. Ed. 703; Clark v. Baker, 14 Cal. 612, 76 Am. Dec. 449; Bigelow on Estoppel, p. 332.

In the recent case of Cobbs v. Union Naval Stores Co., supra, 80 South. 415, 416,[4] the pertinent parts of the deed are, among other things, the granting clause, "for and in consideration of the sum of $4,500 to me in hand paid by Leslie K. Irwin, of Mobile, Alabama, the receipt of which sum of money is hereby acknowledged, do grant, bargain, sell, and convey unto the said Leslie K. Irwin an undivided one-half interest in and to all of the following described property, real, personal, and mixed," following which is a description of personalty, in general and indefinite terms, of the land involved, by definite government numbers and subdivisions, of numerous leasehold interests, "in a very general and indefinite manner," and immediately following is what is referred to (in attorney's brief) as the "intention clause." Thereafter are covenants of warranty. Just preceding the warranty

[4] 202 Ala. 333.

clause and following the description of the property is an interpretation to the effect that—

"The intention of this conveyance being to convey to the said Leslie K. Irwin, the grantee herein, an undivided one-half interest of, in and to, that turpentine farm acquired by me from S. J. Walter and now operated by me, together with an undivided one-half interest in and to all the parts thereof and all the appurtenances thereunto belonging, together with all the additions and extensions which have been made to the place since I purchased it from S. J. Walter on November 25, 1903, including everything connected with or pertinent to said place, embracing all real, personal and mixed property."

Held that. "where a person, having purchased realty and personalty from one who had no title, conveyed with covenants of warranty one undivided half interest in the 'property purchased from' his vendor, his vendee acquired an undivided half interest in the property when the vendor of the half interest subsequently acquired perfect title from a different person"; that what was called the "intention clause" was a mere aid in the description of the property conveyed.

In the instant case the pertinent provisions of the deed from Henderson to Poe are:

(1) The granting clause, determining the interest to be conveyed (McMillan v. Craft, supra; Webb v. Webb's Heirs, supra), as follows:

"Witnesseth: That the said W. D. Henderson and wife, Nevada Henderson, for and in consideration of the sum of one hundred and twenty-four dollars to them in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, have this day granted, bargained, sold, aliened, enfeoffed, and conveyed, and by these presents do grant, bargain, sell, enfeoff, and convey, to the said E. R. Poe and his assigns, all that certain tract or parcel of land lying and being in the county of Talladega and state of Alabama, and more particularly described as follows, to wit: Lots (2 and 3) two and three in block H in the town of Lincoln, county of Talladega, and state of Alabama, according to the original published of said town of Lincoln, Ala. This deed conveys only such interest as was owned by Jessie Wills and her husband, Randall Wills."

(2) The tenendum and habendum (2 Black Comm. 298) are:

"To have and to hold the above-described tract or parcel of land, together with the tenements and appurtenances thereto belonging or otherwise appertaining unto the said party of the second part, his heirs and assigns forever."

(3) The covenants of warranty are:

"And the said W. D. Henderson and wife, Nevada Henderson, of the first part, for themselves, their heirs, executors, and administrators, do warrant and will forever defend the title to the above-described and hereby granted premises unto the said party of the second part, his heirs and assigns, from and against themselves, and all and every person claiming or holding under them, the said party of the first part, and against the lawful title, claim, or demand of all and every person whomsoever claiming or holding by, from or under the government of the United States."

It is a familiar statement of the law of conveyances of real property that the habendum is that clause usually following the granting part of the deed, "which defines the extent of the ownership in the thing granted to be held and enjoyed by the grantee" (3 Wash. Real Prop. 437; Mitchell v. Wilson, 3 Cranch. C. C. 242, Fed. Cas. No. 9672; Wager v. Wager, 1 Serg. & R. (Pa.) 374; 1 Dev. on Real Estate, § 213), and that, where there is a repugnance between the words expressing the grant and the habendum concerning the estate the grantee is to take, the habendum must yield—(1 Dev. on Real Estate, § 214, and authorities). Mr. Devlin quotes approvingly from Ray v. Spears' Ex'r (Ky.) 64 S. W. 413, where the granting clause conveyed to grantee, his heirs and assigns, and the habendum was to have and to hold said lands with appurtenances thereunto belonging forever, and providing, in conclusion, that if the grantee should die without any children, then the land and proceeds thereof must revert to the grantor. Held, that the deed passed to the grantee the absolute fee, and the limitation was void as being inconsistent with the granting and habendum clauses. 1 Dev. on Real Estate, § 214. The justice said of such a conveyance:

"Both the granting and habendum clauses of the deed convey the fee forever in as strong language as could be used; and, after certain other property is conveyed, the addition to or condition is added which it is claimed is a limitation, or which converts the title into a defeasible fee. It seems to us that the attempt to so limit the absolute grant is null and void, because utterly inconsistent with both the granting and the habendum clauses of the conveyance."

In Dickson v. Wildman, 183 Fed. 398, 403, 105 C. C. A. 618, 623, Judge Shelby said:

"If it were conceded that there was repugnancy between the granting clause on the one side and the preliminary recitals and the habendum on the other, and that the conflict was such that the true intent of the grantor could not be ascertained, it is manifest that the court must decide which part of the deed shall prevail. The rule in such case is that the granting clause determines the interest conveyed, and when it is clear and unambiguous, as in the deed in question here, it prevails over introductory recitals in conflict with it, and prevails also over the habendum, if that is in conflict with it. The reason sometimes given for the rule is that a deed founded upon a valuable consideration is to be construed most strongly against the grantor, and, when the con-

flict is in the habendum, that the grantor in the latter part of the deed will not be permitted to deny or retract the grant previously made. The rule is very old, and it may be that it is founded on an effort to enforce the cardinal rule to ascertain and give effect to the intention. The granting clause is naturally looked to to see what it was intended to convey, whereas recitals are often merely introductory, and are not a necessary part of the deed. The granting clause is the very essence of the contract. It is required to transfer title, but the habendum clause is not absolutely necessary to make a deed effective. Where a conflict exists, therefore, in the different parts of a deed, the true intent of the grantor as to what was intended to be conveyed is more likely to be found in the granting clause. The settled rule of construction in Alabama and in many other jurisdictions is that in case of repugnancy between the granting clause and other parts of the deed the former will prevail. Webb v. Webb's Heirs, 29 Ala. 588; McMillan v. Craft, 135 Ala. 148, 33 South. 26; Dickson v. Van Hoose, 157 Ala. 459, 47 South. 718, 19 L. R. A. (N. S.) 719; Moran v. Somes, 154 Mass. 200, 28 N. E. 152; Miller v. Tunica County, 67 Miss. 651, 7 South. 429; Dunbar v. Aldrich, 79 Miss. 698, 31 South. 341; Bodine's Adm'rs v. Arthur, 91 Ky. 53, 14 S. W. 904, 34 Am. St. Rep. 162; Carl Lee v. Ellsberry, 82 Ark. 209, 101 S. W. 407, 12 L. R. A. (N. S.) 956, 118 Am. St. Rep. 60; Smith v. Crosby, 86 Tex. 15, 23 S. W. 10, 40 Am. St. Rep. 818; Wilcoxson v. Sprague, 51 Cal. 640; McLennan v. McDonnell, 78 Cal. 273, 20 Pac. 566; Tate v. Clement, 176 Pa. 550, 35 Atl. 214; Maker v. Lazell, 83 Me. 562, 22 Atl. 474, 23 Am. St. Rep. 795; Hobbs v. Payson, 85 Me. 498, 27 Atl. 519; G. B. & M. C. Co. v. Hewitt, 55 Wis. 96, 12 N. W. 382, 42 Am. Rep. 701; Ingleby v. Swift, 10 Bingham, 84; 9 Am. & Eng. Ency. of Law, 139; 17 Am. & Eng. Ency. of Law, 8."

By the granting clause in instant conveyance, for the recited valuable consideration, was "granted, bargained, sold, aliened, enfeoffed, and conveyed to E. R. Poe and his assigns all that certain tract or parcel of land" specifically described with reference to the map of Lincoln, and being only the interest formerly owned by Jessie Wills. This clause had interlineations, or rather, blanks therein that were filled in writing. The habendum (also partly written and partly printed) was "to have and to hold the described tract or parcel of land together with the tenements and appurtenances thereto belonging" to E. R. Poe (the party of the second part), "his heirs and assigns, forever." The Hendersons, as grantors, "for themselves, their heirs, executors, and administrators," warranted to "forever defend the title to the above-described and hereby granted premises unto the said party of the second part, his heirs and assigns," from the claims of grantors, "from and against themselves and all and every person claiming or holding under them, * * * and against the lawful title, claim or demand of all and every person whomsoever," etc.

[11, 12] On first impression the writer was of opinion the specific warranty of title contained in Henderson's deed to E. R. Poe would prevent the grantor from thereafter acquiring an interest in the lots (from Bryant and Howard Wills) and asserting such ownership and interest against said Poe or against Poe's grantee, Essie C. Porter. I accede to the superior judgment of the CHIEF JUSTICE and of Justices MAYFIELD and SOMERVILLE, and concur in the judgment that the quantum of estate conveyed and declared to be conveyed in the granting clause of Henderson's deed to Poe—"only such interest as was owned by Jessie Wills and her husband, Randall Wills"—controlled, and that by such conveyance E. R. Poe acquired only a one-third interest in the unimproved lots in question. This necessitates that we decide the right of Mrs. Porter, under her cross-bill, to recover for valuable improvements made and erected upon the lots (by her or her grantor) under the bona fide belief of ownership when such improvements were made and before being apprised that the title was disputed. The courts are generally agreed there can be no difference in principle between allowing the equitable claim of a part owner for his valuable improvements, in cases where partition may be had in kind and in cases where partition can only be accomplished by a sale of the common property. Helmken v. Meyer, 138 Ga. 457, 75 S. E. 586, 45 L. R. A. (N. S.) 738, 742.

In this jurisdiction the early cases of Horton v. Sledge, 29 Ala. 478, 498, and Ormond v. Martin, 37 Ala. 598, 606, held that the claim for valuable improvements made by a cotenant may be allowed only as a counter demand or claim for rents, and not to exceed the same. This rule, however, was overturned by the declaration of Mr. Justice Stone in Sanders v. Robertson, 57 Ala. 465, 472, to the effect that a tenant in common claiming lands in good faith, though with constructive notice of owner's right in a suit for partition, ought to have set off to him the lands on which were made his improvements, and, if that cannot be done, he should have compensation therefor by more land or otherwise; rents for one year only being charged against him, as he entered in good faith under color of title. The conflict of authority on this point is adverted to in Ferris v. Montgomery L. & I. Co., 94 Ala. 557, 10 South. 607, 33 Am. St. Rep. 146, where the bill in equity was for partition of land between tenants in common. The conclusion of the justice was that, when the equitable claim of the improving tenant can be fully recognized and protected by awarding him the part which he has improved, this should be done; but it is specifically pointed out that "the question of requiring the other cotenants to make compensation for

the improvements" was not involved in the decision in the Ferris Case. The announcement of Judge Stone in Sanders v. Robertson, supra, was followed by McDaniel v. L. & N. R. R. Co., 155 Ala. 553, 46 South. 981. It was recently given application in Ford v. Borders (Ala. 1917) 75 South. 398,[5] where it was declared that a tenant in common who files his bill for partition in specie, or for a sale of the common property for distribution, may also have an accounting for rents, improvements, or the like, if the subject of the accounting relates to or is connected with the use of the common property, and the accounting is necessary in order to avoid two or more suits. See analogous ruling in Hollis v. Watkins, 189 Ala. 292, 66 South. 29.

In McDaniel v. L. & N. R. R. Co., 155 Ala. 556, 560, 46 South. 981, 982, the railroad company had obtained a deed to certain land from persons living thereon, and its agents entered into possession and made valuable improvements in the bona fide belief that it held and owned the land in fee simple. After the death of one of its said grantors and the making and erection of the improvements, it became known to complainant company that said grantor had previously conveyed the land to respondents, and that said deed was of record at the time of the subsequent conveyance to the railroad company. Under such state of fact, instead of being the owner of the land in fee simple, when the improvements were placed thereon, the complainant company held only an undivided one-fourth interest therein. The company filed a bill in equity praying for a sale of the land, that on distribution of the proceeds of such sale it be allowed the value of the land as enhanced by the improvements over and above its value as unimproved, in addition to one-fourth of the value as unimproved, and that respondents be allowed their proportion of the unimproved land and its rental value as unimproved, if there be such rents accruing. In granting the relief, the court said:

"The demurrants, while recognizing the established principle that, in suits for partition, 'equity will take into consideration the fact that one tenant in common has occupied a portion of the common property and has enhanced its value by making useful improvements thereon, and will, so far as it can do so consistently with an equitable allotment, assign to the tenant making such improvements the land on which they stand, or so much thereof as represents his proportion,' contend and argue that this principle does not apply and cannot be extended to cases in chancery in which a sale of the land and division of the proceeds are prayed for. The foundation upon which the contention and argument seems in the main to be based is that, the jurisdiction of the chancery court to make a sale of lands for division being statutory, that court is limited, in its exercise, to a division of the proceeds of sale according to the interests of the several parties, and possesses no power to adjust any equities claimed in respect to improvements. The jurisdiction to order the sale is statutory, but, notwithstanding this, even on bills for partition, such as that court had original jurisdiction of, when exact or fair division in kind was impracticable, 'the court could compensate for an inequality by a pecuniary compensation charged on the land by way of rent or servitude, could direct an account of rents and profits received by one of the joint owners, and award compensation to a joint owner for improvements made by him, either by assigning him that part of the land on which the improvements were located, or by setting off their value against rents and profits.' * * * The court having jurisdiction to make the sale, the equity sought to be worked out by the bill in the present case is that, the improvements having been made at a time when the complainant's agents really and in good faith believed it to be the true owner of the land, 'a court of equity will not allow respondents to deprive complainant of the fruits of its labors and expenditures, if such an unconscionable result may be avoided consistently with the security to each of them of the full measure of all that he is entitled to claim.' * * *

"It is said by counsel that there is no precedent in Alabama for the enforcement of the right here set up by the complainant; but this is not a sufficient argument for holding that such a right may not be enforced. Though the jurisdiction was conferred by statute on the chancery court to decree a sale of land for division, yet it is true the statute did not in words provide that the court should have jurisdiction to so mold its decrees as to adjust inequalities which might exist amongst the parties in respect to the land; but, the jurisdiction being conferred to order the sale, if it should be shown that the land cannot be equitably partitioned without a sale, we have no doubt that the court, by its inherent and original jurisdiction, may adjust all incidental matters so as to bring about and secure an equitable division of the proceeds arising from the sale. To hold otherwise would be, it seems to us, to make the statute inefficient and to thwart the *obvious purposes of the enactment.* In partition suits this court has recognized and enforced the equitable rule that the court, if it is practicable, should so order the partition as to give the benefit of any improvements made on the premises to him who may have erected or made them; and this is done by assigning to such part owner the portion of the estate on which such improvements are located. The only qualification of the rule is that there must be no impairment of the rights of the cotenants. In Ferris v. Montgomery, etc., 94 Ala. 557, 10 South. 607, 33 Am. St. Rep. 146, will be found an admirable review of our cases on the different phases of the subject, as well as a restatement of the principles which govern. There we find this statement: 'When the equitable claim of the improving tenant can be fully recognized and protected by awarding him the part which he has improved, the question of requiring the other cotenants to make compensation for the improvements is not involved. They get their full shares of the property, without any charge or

burden upon them because of the improve-ments.'

"In this case the purchase price paid by complainant for the land was $80, and it is averred that this was the fair and reasonable value before the improvements were made. It is true the respondents' deed was of record when complainant made its purchase, and that this was constructive notice of their title; but it does not prevent the complainant from asserting that the improvements were made while complainant in good faith believed it was the exclusive owner. It is not a question of superiority of title, but purely one of good faith in the claim of ownership and in the erection of improvements. It cannot be denied that the improvements enhanced the value of the property; and if it is shown that the property cannot be equitably divided without a sale, and a sale is had, then, under the circumstances, to hold that the respondents should have (of the proceeds) three-fourths of an amount which would represent the real value of the land without the enhanced value arising from the improvements, and of their reasonable rental value, would, we think, do them no injustice, but would give them what in equity and good conscience they are entitled to. On the other hand, if the complainant, in good faith and believing it was the exclusive owner of the land, made the improvements, then to allow the respondents to share the proceeds of the sale according to their several interests in the land, irrespective of the enhanced value thereof at the time of the sale by any reason of the improvements, would be taking from the complainant something for nothing and bestowing it upon the respondents. This would be inequitable and unjust. If the court, in a partition proceeding, may adjust such inequalities by allotting to the improving tenant the part of the land on which the improvements rest, we see no sound reason for withholding such power in a sale for division proceeding. It may certainly be as easily and accurately accomplished in the latter as in the former proceeding, and that, too, without any prejudice to the rights of the co-owners. 'It would be doing harm to none and justice to all.' In the latter case the others get just what they would have received without the improvements, and the one making them is reimbursed without injury to any one. While we may have no case in which the principle involved has been applied in a proceeding to sell for division, there are decisions by respectable courts in other jurisdictions in which it has been so applied; and we think they are rested on sound reasoning and equity."

The rule of the McDaniel Case was followed by the Supreme Court of Minnesota in Hunt v. Meeker County Abstract & Loan Co., 135 Minn. 134, 137, 160 N. W. 496, 497, where the authorities are collected and summarized as follows:

"The authorities are almost unanimous upon the proposition that, in a partition suit, where it is practicable to make a division of the property, the court, upon ascertaining that one cotenant has made a permanent and valuable improvement upon the real estate involved, will allot to him that portion upon which the improvement is located, not taking into account the value of the improvement; also, if a division cannot be made without prejudice to the parties, the court will determine the amount in which the value of the premises then stand enhanced because of the improvement, and direct that out of the proceeds of the sale there be paid to the one who made the improvement the amount so determined, and that the remainder be divided among the cotenants in proportion to the undivided interest held by each in the property. In other words, if the improvement made exclusively by one cotenant adds to the price which the property will bring on a sale, the amount so added is to be paid to him."

The text-books are to like effect. Sedg. & Wait on Trial of Title to Land (2d Ed.) § 693 et seq.; Freeman on Cotenancy and Partition (2d Ed.) § 509 et seq.; 1 Story, Equity Jur. (13th Ed.) § 654; 2 Pomeroy, Eq. Jur. §§ 719–722; 1 A. L. R. pp. 1189–1225.

The reason of the rule allowing compensation to the improving tenant in common, acting in good faith, and not for the purpose of embarrassing his cotenants, or incumbering the estate, or hindering partition, is that, when his improvements enhance the value of the common estate, and his cotenants are not in any way injured or prevented from having partition or division, they should not be permitted to take advantage of the improvements which have enriched the common property and to which they have contributed nothing. Thus is justice done to the cotenant making the valuable improvements by giving him the benefit thereof, and no injustice is done to the other cotenant by not permitting him to share the increased value of the land due to such improvements, to which he has not contributed. This is done as against a part owner of the legal title on the principle that he who seeks equity must do equity. Ford v. Knapp, 102 N. Y. 135, 6 N. E. 283, 55 Am. Rep. 782; Yung v. Blake, 156 App. Div. 211, 215, 141 N. Y. Supp. 300; Nahaolelua v. Kaaahu, 10 Haw. 662; 1 A. L. R. 1206.

The underlying reason of the foregoing rule supports the view that, where such valuable improvements are made by a grantor, warrantor, or ancestor, in the bona fide possession of real property under a claim of right before being apprised that the title was in dispute (Horton v. Sledge, supra), the grantee, warrantee, or heir at law, acquiring such property or interest therein, in equity, should have the benefit of such improvements on the property to the extent we have indicated. Sedg. & Wait on Trial of Title to Land (2d Ed.) § 706; 45 L. R. A. (N. S.) notes pp. 738–741; Green v. Putnam, 1 Barb. (N. Y.) 500, 509; Willingham v. Long, 47 Ga. 540; Morrison v. Robinson, 31 Pa. 456; Curtis v. Poland, 66 Tex. 511, 513, 2 S. W. 39; Ward v. Ward's Heirs, 50 W. Va. 517, 521, 40 S. E. 472; Gjerstadengen v. Hart-

zell, 9 N. D. 268, 277, 83 N. W. 230, 81 Am. St. Rep. 575; Yung v. Blake, supra; Dehoney v. Bell, 30 S. W. 400, 17 Ky. Law Rep. 76; Lynch v. Lynch (Tex. Civ. App.) 130 S. W. 461, 464; Stump v. Hornbeck, 15 Mo. App. 667, 669; Griswold v. Bragg (C. C.) 18 Blatchf. 204, 206, 48 Fed. 519. As a logical deduction from the better considered cases where partition is sought in equity and a division in kind of real property cannot be made without great prejudice to the parties, and, in consequence, a sale of the property and a division of the proceeds has been ordered, a court of equity, on ascertaining that one cotenant in good faith has made valuable improvements on the property involved under circumstances we have indicated, will determine the amount in which the premises then stand enhanced in value because of the improvements, and direct that out of the proceeds of the sale there shall be paid to the cotenant who made the valuable improvements (or to his grantee, warrantee, heirs at law, or devisees) the amount so determined to be equitable and just by reason of the enhanced value of the improvements, and the remainder to be divided among all the cotenants in proportion to the undivided interest held by each in the property. In other words, if the improvements made by one cotenant add to the amount which the property will bring on the partition sale, the amount so added is to be paid to him (or his grantee, warrantee, heirs at law, or devisees) out of the proceeds of the sale, in addition to his pro rata share of the proceeds, according to his undivided interest in the property.

The complainant, Henderson, seeks, in a court of chancery, to enforce his after-acquired title to a two-thirds interest in the land in question, and have partition of the common property against an innocent person (Essie C. Porter) who in good faith had

203 ALA.—21

expended money and labor in making valuable improvements upon the unimproved lots sold by Henderson to E. R. Poe, supposing herself to be the absolute owner thereof and purchased the improved property from a like innocent person (E. R. Poe) who likewise in good faith had expended money and labor upon the land in making the first valuable improvements thereon, and who must defend the title thereto under the warranty contained in the deed from Poe to Porter. A court of chancery will compel the complainant to do equity by ascertaining the present values of such valuable improvements so placed on the lots, by Poe and by Porter, and allowing the same to respondent (complainant in the cross-bill) according to the aforestated rules of justice and honesty governing such matter.

The decree of the lower court is affirmed to the extent that it confirmed Henderson's title to an undivided two-thirds interest in the unimproved lots, and that of Mrs. Porter to a one-third interest, and is reversed and remanded for ascertainment on reference of the present value of the said improvements placed on the unimproved lots by E. R. Poe, and conveyed by such grantor (with covenants of warranty) to Essie C. Porter, and also for ascertainment of the present value of the valuable improvements placed on said lots by said Porter, which amounts will be allowed respondent, Porter, out of the proceeds of the sale, according to the rules we have announced, together with her one-third interest in the proceeds of the sale of the lots exclusive of the improvements.

Affirmed in part, reversed in part, and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.